# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1870

_____

Jesus Eduardo Lopez Silva,

*Plaintiff - Appellant*,

v.

United States of America,

*Defendant - Appellee*.

------------------------------

American Immigration Council; National Immigration Project of the National
Lawyers Guild,

*Amici on Behalf of Appellant*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 7, 2017
Filed: August 9, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Jesus Eduardo Lopez Silva sued the government under the Federal Tort Claims Act and the Constitution, seeking compensation for harms arising from his alleged wrongful removal to Mexico. The district court[1] concluded that it lacked subject matter jurisdiction over the action and dismissed Lopez Silva's complaint. We conclude that 8 U.S.C. § 1252(g) precludes the exercise of jurisdiction and therefore affirm.

I.

Lopez Silva is a Mexican citizen who entered the United States as a lawful permanent resident in 1992. He was convicted of two criminal offenses in Minnesota, and the government initiated removal proceedings against him in April 2012. An immigration judge ordered Lopez Silva removed to Mexico, but he filed a timely appeal to the Board of Immigration Appeals. An appeal automatically stays the execution of a removal order while the appeal is pending. 8 C.F.R. § 1003.6(a).

Despite the stay of the removal order, the government removed Lopez Silva to Mexico on July 17, 2013. After realizing the mistake, agents of the government returned Lopez Silva to the United States in September 2013. An immigration judge ultimately granted Lopez Silva's application for cancellation of removal, so he remained lawfully in the United States.

Lopez Silva then sued the government to seek compensation for harm allegedly arising from an unlawful removal. He brought several claims under the Federal Tort Claims Act and several claims alleging violations of his rights under the Fourth and

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

-2-

Fifth Amendments. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

The government moved to dismiss for lack of subject matter jurisdiction based on 8 U.S.C. § 1252(g). The district court granted the motion and dismissed the complaint. Lopez Silva appeals, and we review the decision on jurisdiction *de novo*. *Allen v. United States*, 590 F.3d 541, 544 (8th Cir. 2009).

## II.

This dispute concerns the scope of the limitation on a district court's jurisdiction set forth in 8 U.S.C. § 1252(g). That provision states in relevant part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of the Department of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien."[2] The government's position, accepted by the district court,

---

[2] Section 1252(g) provides in full:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

In light of legislation transferring functions of the former Immigration and Naturalization Service to the Department of Homeland Security, 6 U.S.C. §§ 202, 251, 557, the statutory reference to "Attorney General" now means the Secretary of the Department of Homeland Security. *Elgharib v. Napolitano*, 600 F.3d 597, 606-07 (6th Cir. 2010).

is that Lopez Silva's claims arise from a decision to execute a removal order against an alien, so the court lacked jurisdiction to hear the claims.

Lopez Silva and his supporting *amici* respond that the alien's claims do not arise from a decision or action to execute a removal order, but rather from a violation of the stay of removal proceedings. We disagree with this characterization. The governing regulations provide that a removal order "shall not be executed" while an administrative appeal is pending. 8 C.F.R. § 1003.6(a). But the removal order here still existed after the administrative appeal was filed, and the authorities mistakenly executed the order. A claim that is "connected directly and immediately" to a decision to execute a removal order arises from that decision. *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999). Although the execution of this removal order happened to be in violation of a stay, the alien's claims are directly connected to the execution of the removal order. *See Foster v. Townsley*, 243 F.3d 210, 214-15 (5th Cir. 2001); *see also Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (per curiam). We therefore conclude that Lopez Silva's claims arise from a decision or action to execute a removal order.

Lopez Silva contends alternatively that even if his claims arise from a decision to execute a removal order, the limitation on jurisdiction in § 1252(g) applies only to *discretionary* decisions of the Secretary. He argues that the Secretary and his subordinates had no discretion to ignore the stay of removal while Lopez Silva's administrative appeal was pending. The statute, however, makes no distinction between discretionary and nondiscretionary decisions. So long as the claim arises from a decision to execute a removal order, there is no jurisdiction. *Accord Foster*, 243 F.3d at 214-15.

Lopez Silva urges that *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), requires us to narrow the scope of § 1252(g) to discretionary decisions of the Secretary. The Court in *AADC* addressed whether § 1252(g) applied

to aliens who were already in either exclusion or deportation proceedings on the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The Court explained that § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders;'" it does not apply to deportation cases more generally. *Id.* at 482. In explaining the history of the provision, the Court at one point observed that § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485. But this reference to discretionary decisions did not say that § 1252(g) applies *only* to discretionary decisions, notwithstanding plain language that includes no such limitation. "Congress often passes statutes that sweep more broadly than the main problem they were designed to address." *Gonzales v. Oregon*, 546 U.S. 243, 288 (2006). The terms of the statute, not the principal concerns of the enacting legislators, must govern. *Id.*

Lopez Silva contends that the district court's ruling conflicts with *Jama v. Immigration & Naturalization Service*, 329 F.3d 630 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005), where this court rejected the government's reliance on § 1252(g). In *Jama*, an alien petitioned for a writ of habeas corpus, disputing a legal conclusion of the Attorney General. The alien argued that a provision of the immigration laws, 8 U.S.C. § 1231(b)(2)(E)(iv), did not authorize the government to remove him to Somalia, the country of his birth, without first establishing that Somalia would accept his return. The government responded that the court lacked jurisdiction over the claim under § 1252(g), because the alien challenged the execution of a removal order.

This court ruled that the district court retained jurisdiction over the alien's claim: He was not objecting to a "discretionary decision or action to execute [a]

-5-

removal order," but was instead challenging the Attorney General's "legal conclusion" that § 1231(b)(2)(E)(iv) authorized the alien's return to Somalia without first establishing that the country would accept him. *Id.* at 632. Because the alien presented a "purely legal question of statutory construction," the district court had authority to proceed. *Id.*

*Jama* did contrast a "purely legal question" with a "discretionary decision or action," but the court did not hold that § 1252(g) applies *only* to claims arising from discretionary decisions. The court essentially carved out an exception to § 1252(g) for a habeas claim raising a pure question of law, in part due to concerns that a contrary rule would give rise to substantial constitutional questions. *Id*. at 633. Lopez Silva's case may not involve a discretionary decision by the agency, but neither does it present a habeas claim that raises a purely legal question of statutory construction. The alien's claims here arise from a decision to execute a removal order, and *Jama*'s rationale does not warrant excepting these claims from the limitation on the district court's jurisdiction.

Lopez Silva also contends that § 1252(g) does not apply to claims under the FTCA or to constitutional claims based on *Bivens*, because they are not specified in the statute. The limitation on jurisdiction, however, applies to "*any* cause or claim by or on behalf of any alien" that arises from a decision to execute a removal order, so it was unnecessary for Congress to enumerate every possible cause or claim.

*Amici* argue that Congress would not have immunized local officers with authority to enforce the immigration laws from damages in 8 U.S.C. § 1357(g)(8) if § 1252(g) eliminated jurisdiction over damages actions. But § 1252(g) does not preclude *all* damages actions against local officers. The provision applies to three discrete actions that an official might take; it does not apply to all claims arising from deportation proceedings. *AADC*, 525 U.S. at 482. Claims arising from decisions "to open an investigation, to surveil the suspected violator, [and] to reschedule the

-6-

deportation hearing," among others, are within the jurisdiction of the district courts. *Id*. Section 1357(g)(8) would take effect if any such claim were brought against a local officer seeking damages.

The district court correctly concluded that it lacked jurisdiction to hear Lopez Silva's claims, because they arise from a decision to execute a removal order. The judgment of the district court is therefore affirmed.

KELLY, Circuit Judge, dissenting.

The Supreme Court has rejected the "unexamined assumption that § 1252(g) covers the universe of deportation claims—that it is sort of a 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" AADC, 525 U.S. at 482. Instead, § 1252(g) is "much narrower," and strips federal courts of jurisdiction only over claims arising from "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Id. (quoting 8 U.S.C. § 1252(g)). The question presented here is whether Silva's claims, brought under the Federal Tort Claims Act and the Constitution, arise from the government's decision or action to execute a removal order. I conclude that they do not.

Pursuant to 8 C.F.R. § 1003.6(a), Silva's removal order was automatically stayed during Silva's time to appeal and while his timely appeal was pending. This mandatory automatic stay "suspend[ed] the source of authority to act" on the removal order, and "temporarily divest[ed] [the] order of enforceability." Nken v. Holder, 556 U.S. 418, 428–29 (2009); cf. In re Partida, 862 F.3d 909 (9th Cir. 2017) (automatic stay of bankruptcy proceedings "suspends all activity relating to collection of pre-filing debts" and "stop[s] 'all collection efforts, all harassment, and all foreclosure actions'"). Thus, § 1003.6(a)'s mandatory automatic stay divested the government

of its authority to remove Silva "before the legality of that action ha[d] been conclusively determined." Nken, 556 U.S. at 428.

The government violated this mandatory automatic stay when it removed Silva while his appeal was pending. Reading § 1252(g) narrowly, as we must, AADC, 525 U.S. at 482, Silva's claims resulting from this violation cannot be fairly characterized as "arising from" the government's decision or action to execute a removal order. Regardless of whether Silva's claims are connected to his being removed from the United States, they cannot arise from the government's execution of a removal order because there was no enforceable removal order for the government to execute. See Nken, 556 U.S. at 428 (stay divests removal order of enforceability); cf. White v. I.N.S., 6 F.3d 1312, 1316 (8th Cir. 1993) (noting that a nonfinal removal order "would be a nullity and there would be nothing to execute"). Instead, Silva's claims arise out of the government's violation of a mandatory automatic stay of the removal order. See Garcia v. Attorney Gen., 553 F.3d 724, 729 (3d Cir. 2009) (jurisdictional bar does not apply when petitioner "is not challenging the discretionary *decision* to commence proceedings, but is challenging the government's very *authority* to commence those proceedings after the limitation period has expired"); Turnbull v. United States, 2007 WL 2153279, at *4–5 (N.D. Ohio 2007) ("[P]laintiff is not challenging the order of removal. Rather, the focus of the present lawsuit is the damages that flowed from defendants' refusal to abide by the stay order issued in the habeas proceeding and the forced deportation that followed.").

Because I conclude that Silva's claims do not arise out of the government's execution of a removal order, I would find that § 1252(g) does not strip the district court of jurisdiction to hear Silva's claims. Therefore, I respectfully dissent.

———————————————