**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CLAUDIO ANAYA ARCE,<br>*Plaintiff-Appellant*, | No. 16-56706 |
| v. | D.C. No.<br>2:16-cv-02419-<br>PSG-MRW |
| UNITED STATES OF AMERICA,<br>*Defendant-Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted May 15, 2018
Pasadena, California

Filed August 9, 2018

Before: Kim McLane Wardlaw, Jacqueline H. Nguyen,
and John B. Owens, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Immigration

The panel reversed the district court's dismissal for lack of jurisdiction of Claudio Anaya Arce's complaint under the Federal Tort Claims Act for damages suffered as a result of his removal from the United States in violation of this court's temporary stay of removal, holding that the district court erred in concluding that 8 U.S.C. § 1252(g) deprived it of jurisdiction, and remanded.

After an immigration judge determined that Anaya had not established a reasonable fear of persecution or torture, he filed an emergency petition for review and motion for a stay of removal with this court. Upon filing, the order of removal was temporarily stayed until further order of this court. Despite the issuance of automatic electronic notice of the stay, a faxed copy of the stay from Anaya's attorney, and calls by his attorney to the deportation officer assigned to the case, the Department of Homeland Security removed him to Mexico where he remained until DHS returned him to the United States pursuant to this court's order.

Anaya sued the United States under the FTCA in district court, raising claims of false arrest and imprisonment, intentional infliction of emotional distress, and negligence. The district court dismissed Anaya's case on the ground that 8 U.S.C. § 1252(g) deprived it of jurisdiction.

---

**\*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Section 1252(g) provides, in part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the decision or action by the [Secretary of the Department of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders."

The panel held that a decision or action to violate a court order staying removal falls outside of the jurisdiction-stripping reach of § 1252(g), explaining that Anaya's claims arise not from the execution of the removal order, but from the violation of the court's order staying removal. The panel noted that its interpretation is supported by the express instructions of the Supreme Court, this court's precedent, and common sense, all of which require the court to read the statute narrowly.

The panel also noted that, even if it agreed that Anaya's claims tangentially arise from the execution of the removal order, the court would retain jurisdiction because the agency lacked the authority, and therefore the discretion, to remove Anaya. In this regard, the panel noted that this court has limited § 1252(g)'s jurisdiction-stripping power to actions challenging *discretionary* decisions to initiate proceedings, adjudicate cases, and execute orders.

The panel also acknowledged that the Eighth Circuit, in *Silva v. United States*, 866 F.3d 938 (8th Cir. 2017), reached a contrary result, holding that it lacked jurisdiction over the FTCA claims of a noncitizen who was wrongfully removed in violation of stay issued by the BIA.

Finally, the panel rejected the government's alternative argument that Anaya's claims were barred by the FTCA's

foreign country exception, concluding that Anaya's injury clearly occurred in the United States.

---

## COUNSEL

Stacy Tolchin (argued) and Megan Brewer, Law Offices of Stacy Tolchin, Los Angeles, California, for Plaintiff-Appellant

Joseph A. Darrow (argued), Trial Attorney; Stacey I. Young, Senior Litigation Counsel; William C. Peachey, Director; Chad A. Readler, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

---

## OPINION

PER CURIAM:

On February 6, 2015, agents of the Department of Homeland Security wrongfully removed Claudio Anaya Arce (Anaya) to Mexico, in direct violation of a temporary stay of removal. Two weeks later, pursuant to a court order, he was returned to the United States. Anaya sued the United States under the Federal Tort Claims Act (FTCA) for damages suffered as a result of the wrongful removal. The district court dismissed the complaint on the ground that 8 U.S.C. § 1252(g) deprived it of jurisdiction. We reverse.

## I.

We have jurisdiction over the final order of the district court under 28 U.S.C. § 1291. *See also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018) ("[W]e always 'have jurisdiction to determine our own jurisdiction.'" (quoting *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1117 (9th Cir. 2009))).

## II.

On April 12, 2014, Anaya, a citizen of Mexico, was apprehended by U.S. Customs and Border Patrol officers and detained in Adelanto, California.[1] Anaya expressed a fear of harm if removed to Mexico, but an asylum officer determined that he had not established a reasonable fear of persecution or torture.[2] On February 4, 2015, an immigration judge (IJ) affirmed this negative reasonable fear finding, and the case was returned to the Department of Homeland Security (DHS) to effectuate Anaya's removal. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. §§ 1208.31(f)–(g).

On February 6, 2015, Anaya, through counsel, filed an emergency petition for review and motion for a stay of

---

[1] In reviewing a motion to dismiss, we presume the complaint's factual allegations are true. *See Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014).

[2] Because Anaya had previously been removed from the United States, the government was permitted to reinstate his "prior order of removal . . . from its original date." 8 U.S.C. § 1231(a)(5). After expressing a fear of returning to Mexico, however, Anaya was entitled to "immediate[] referr[al] to an asylum officer for an interview to determine" whether he "ha[d] a reasonable fear of persecution or torture" that would allow him to seek withholding of removal and relief under the Convention Against Torture. 8 C.F.R. § 1241.8(e).

removal with our court.  We had jurisdiction over the petition under *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 959 (9th Cir. 2012).  Upon filing, "the order of removal . . . [was] temporarily stayed until further order of the Court."  Ninth Circuit General Order 6.4(c).  The stay issued at 11:25 AM.

Despite the issuance of automatic electronic notice of the stay, a faxed copy of the stay from Anaya's attorney, and calls by his attorney to the deportation officer assigned to the case, DHS removed Anaya from the Adelanto facility at 2:15 PM and deported him to Mexico.  He remained in Mexico until February 20, 2015, when DHS returned him to the United States pursuant to our court's order to bring him back.

As required by the FTCA, Anaya filed an administrative claim, which DHS denied.  *See* 28 U.S.C. § 2675(a).  He then sued the United States under the FTCA in federal district court, raising claims of false arrest and imprisonment, intentional infliction of emotional distress, and negligence. The district court dismissed Anaya's case on the ground that 8 U.S.C. § 1252(g) deprived it of jurisdiction.  This appeal followed.

## III.

### A.

We must decide whether 8 U.S.C. § 1252(g) deprives us of jurisdiction to hear the FTCA claims of a noncitizen[3] who was wrongfully removed in violation of a court order.

---

[3] Following the lead of the United States Supreme Court, we "use[] the term 'noncitizen' throughout this opinion to refer to any person who

Section 1252(g) states, in part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General[4] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The government argues that Anaya's claims fall squarely within the scope of § 1252(g) because they "aris[e] from" the Attorney General's decision or action to execute the removal order. In the government's view, its violation of the court's stay of removal order is irrelevant because the jurisdiction-stripping language of § 1252(g) extends to *any* action taken in connection with a removal order.

We do not believe that the statute sweeps as broadly as the government contends. Anaya is not attacking the removal itself, as he does not challenge the validity of his removal order, or claim that the Attorney General should have exercised discretion to delay his removal. Instead, he points out—correctly—that the Attorney General lacked the authority to execute the removal order because of the stay of

---

is not a citizen or national of the United States." *Pereira v. Sessions*, 138 S. Ct. 2105, 2110 n.1 (2018) (citing 8 U.S.C. § 1101(a)(3)).

[4] While the statute refers to the Attorney General, in 2002, Congress transferred the Attorney General's immigration enforcement responsibilities to the Secretary of DHS. 6 U.S.C. § 202(3); *see Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005). Thus, references to the Attorney General in this opinion refer to the Secretary.

removal issued by our court.  Thus, his claims arise not from the execution of the removal order, but from the violation of our court's order.  Indeed, the stay of removal "temporarily suspend[ed] the source" of the Attorney General's "authority to act," resulting in a "setting aside of . . . [the] authority to remove" Anaya.  *Nken v. Holder*, 556 U.S. 418, 428–29 (2009).  Put differently, but for the violation of the stay of removal, Anaya would not have an FTCA claim at all.

Our interpretation is supported by the express instructions of the Supreme Court, our precedent, and common sense, all of which require us to read the statute narrowly.  The Supreme Court has not "interpret[ed] [the statute's] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).  Thus, § 1252(g) does not strip the federal courts of jurisdiction over claims challenging the multitude of "other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order . . . , and to refuse reconsideration of that order."  *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 482 (1999).  A decision or action to violate a court order staying removal similarly falls outside of the statute's jurisdiction-stripping reach.

Moreover, even if we agreed with the government that Anaya's claims tangentially "arise from" the execution of his removal order, we would still retain jurisdiction because the Attorney General entirely lacked the authority, and therefore the discretion, to remove him.  "Follow[ing] the [Supreme] Court's instruction to interpret § 1252(g) narrowly," *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en

banc), we have limited the statute's jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders. In *Barahona-Gomez v. Reno*, we rejected, for the second time, the government's argument that § 1252(g) deprived our court of jurisdiction over a challenge to a directive from the Board of Immigration Appeals (BIA) and the Chief Immigration Judge "ordering a halt to the issuance of decisions granting suspension of deportation . . . until further notice." 236 F.3d 1115, 1117 (9th Cir. 2001). Though such an order could be interpreted to arise from the "decision or action" to "adjudicate cases," we declined to adopt such a broad reading, instead finding that the statute "does not remove from judicial review actions in violation of mandatory duties of IJs and the BIA conducted pursuant to the usual rules of administrative procedure." *Id.* at 1120–21. *See also Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc) (reading *AADC* to limit § 1252(g)'s scope to "the three specific *discretionary* actions mentioned in its text, not to all claims relating in any way to deportation proceedings" (emphasis added)); *accord AADC*, 525 U.S. at 483–84 & n.9 (noting that § 1252(g) was enacted to target "a particular evil: attempts to impose judicial constraints upon prosecutorial discretion"). Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated.

Finally, taken to its logical conclusion, the government's reading would significantly circumscribe our authority to enforce our orders. As government counsel conceded at argument, in its view, the district court would lack jurisdiction even to sanction DHS for intentionally deporting a subpoenaed witness while under a court order not to do so. There is no support for the government's claim that

Congress intended to prohibit federal courts from enforcing *any* court order so long as it is related to or in connection with an immigration proceeding.

## B.

We acknowledge that the Eighth Circuit, in a split decision, reached a contrary result, holding that it lacked jurisdiction over the FTCA claims of a noncitizen who was wrongfully removed in violation of stay issued by the BIA. *Silva v. United States*, 866 F.3d 938, 939 (8th Cir. 2017). The *Silva* majority held that § 1252(g) eliminated jurisdiction because the removal order "still existed" in spite of the stay, thereby "connect[ing]" the FTCA claim "directly and immediately" to the decision to execute the order. *Id.* at 940 (quoting *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999)).

Respectfully, we find the analysis in Judge Kelly's dissent much more persuasive. As Judge Kelly explained, the claims at issue "cannot be fairly characterized as 'arising from' the government's decision or action to execute a removal order . . . because there was no enforceable removal order for the government to execute." *Id.* at 942 (Kelly, J., dissenting). *See also Avalos-Palma v. United States*, No. 13-5481 FLW, 2014 WL 3524758, at *7–8 (D.N.J. July 16, 2014) (finding the plaintiffs' FTCA claims to stem "from ICE's failure to abide by the stay, not from the execution of his removal order"); *Turnbull v. United States*, No. 1:06-cv-858, 2007 WL 2153279, at *5 (N.D. Ohio July 23, 2007) (same).

The *Silva* majority also rejected the argument that § 1252(g) is limited to discretionary decisions. 866 F.3d at 940–41 (noting statutory silence on the issue). In our circuit, however, we are bound by our own precedent that limits

§ 1252(g)'s scope to discretionary decisions that the Attorney General actually has the power to make, as compared to the violation of his mandatory duties. *See Barahona-Gomez*, 236 F.3d at 1120–21. And even if we were not so bound, "we are guided here, as elsewhere, by the general rule to resolve any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation," *ANA Int'l, Inc. v. Way*, 393 F.3d 886, 894 (9th Cir. 2004), and by the "strong presumption in favor of judicial review," *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Anaya's FTCA claims may proceed.[5]

**REVERSED AND REMANDED.**

---

[5] We reject the government's brief alternative argument that Anaya's claims are barred by the FTCA's foreign country exception. A claim arises where "the last act necessary to establish liability occurred," and "[a]n injury 'occurs' where it is first suffered, even if a negligent act results in further or more serious harm." *S.H. by Holt v. United States*, 853 F.3d 1056, 1061-62 (9th Cir. 2017) (citation omitted). Anaya's injury clearly occurred in the United States when the government removed him from Adelanto and deported him to Mexico.