HON. STEVE KIM, U.S. MAGISTRATE JUDGE
I.
INTRODUCTION
Plaintiff is a national and citizen of Nigeria who is subject to a final order of removal and in the custody of Immigration and Customs Enforcement (ICE) pending his removal. He is also awaiting a final decision-which could still be years away-from U.S. Citizenship and Immigration Services (USCIS) on his application for U nonimmigrant status, also called a U-visa. A U-visa grants temporary legal status for victims of certain specified crimes who help law enforcement investigate or prosecute criminal activity. See 8 U.S.C. §§ 1101(a)(15)(U), 1184(p) ; 8 C.F.R. § 214.14(b). Claiming eligibility for that *1212 status, Plaintiff requested at least three times that ICE stay his removal until USCIS decided his application. But the agency granted only his first request. Even after USCIS notified ICE and Plaintiff that his application was prima facie eligible for relief, ICE refused another stay request. So Plaintiff filed this lawsuit under 28 U.S.C. § 2241 and the Administrative Procedure Act (APA), 5 U.S.C. § 706, seeking to prevent ICE from executing his removal while he awaits a final U-visa decision. (Complaint ("Compl."), ECF No. 1).
Plaintiff does not contest either the validity of his removal order or the legality of his detention. Nor does he dispute that, under the relevant immigration laws, ICE retains the discretionary authority-but not any legal obligation-to stay Plaintiff's removal pending a U-visa decision by USCIS. Plaintiff also does not dispute that USCIS can grant him a U-visa even after ICE removes him and while he is outside the United States. Instead, Plaintiff maintains that in deciding not to stay his removal, ICE failed to follow its own internal agency guidance that favors postponing removal for noncitizens with prima facie-eligible U-visa applications. The failure to follow that guidance was, according to Plaintiff, arbitrary and capricious and an abuse of the agency's discretion. (Compl. at 4-6).
Defendants counter that the Court cannot evaluate whether or how ICE followed its internal guidelines in refusing to stay Plaintiff's removal because section 1252(g) of the Immigration and Nationality Act (INA) eliminates federal court jurisdiction to review such discretionary decisions. This provision provides that "no court shall have jurisdiction to hear any cause or claim ... arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 8 U.S.C. § 1252(g). While the Supreme Court has narrowly construed this jurisdiction-stripping statute to apply only to "a limited subset of deportation claims" arising directly from the "specified decisions and actions," Reno v. American-Arab Anti-Discrimination Committee , 525 U.S. 471, 483, 487, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (" AADC "), Plaintiff's action is one of those cases that falls categorically under section 1252(g), even as narrowly construed in AADC . Indeed, to state Plaintiff's argument is to refute it, for Plaintiff challenges the exercise of ICE's discretion to decide whether and when to carry out his removal order. If ICE had made the opposite choice and stayed Plaintiff's removal, he would have no "cause or claim" to pursue. No matter how Plaintiff describes his claim, then, it necessarily "aris[es] from" ICE's "decision" to "execute [his] removal order." 8 U.S.C. § 1252(g). Thus, the Court lacks jurisdiction and must dismiss the action.
II.
BACKGROUND
Plaintiff entered the United States unlawfully in 1995. (Compl. at 22). In 2013, ICE began removal proceedings. (Id. ). That same year, an immigration judge (IJ) denied Plaintiff's requests for asylum and withholding of removal and ordered him removed. (Id. at 23). In 2014, the Board of Immigration Appeals (BIA) affirmed the IJ's removal order, and the Ninth Circuit denied Plaintiff's petition for review in 2016. (Id. at 23-24). Then, in February 2017, Plaintiff filed a U-visa application with USCIS, claiming that he was eligible for that visa as the victim of a 2007 felony assault in Los Angeles, California. (Id. at 24-25). Why Plaintiff did not apply for the U-visa sooner while his removal proceedings were underway is unexplained.[1]
*1213 When he filed his U-visa application with USCIS, Plaintiff had to file a separate application for a stay of removal with ICE. (Id. at 24-25). While USCIS has sole authority to grant U-visas, see 8 C.F.R. § 214.14(c)(1), "the filing of a [U-visa application] has no effect on ICE's authority to execute a final order." Id. § 214.14(c)(1)(ii). That is why noncitizens with pending U-visa applications who are subject to a final order of removal must separately ask ICE to issue a stay of removal, which the agency has the discretion to grant or deny.[2] See 8 U.S.C. § 1227(d)(1) ; 8 C.F.R. § 241.6(a). In September 2009, ICE issued internal guidance detailing "factors to consider" in deciding such stay requests. See Memo. from David J. Venturella, Acting Director, U.S. Immigration & Customs Enforcement, Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants , at 1 (Sept. 24, 2009) (the "Venturella Memo"). This guidance-which remains in effect according to Defendants-states that ICE "should favorably view" stay requests by applicants found to be prima facie eligible for a U-visa, unless "serious adverse factors" are present. Id. at 2-3. Such factors include national security or public safety concerns, significant criminal history, and evidence of human rights violations or immigration fraud. See id.
ICE at first granted Plaintiff a three-month stay of removal in March 2017. (Compl. at 25-26). But it later denied two more stay requests and arrested Plaintiff in January 2018 to carry out his removal. (Id. ). Meanwhile, in February 2018, USCIS notified ICE and Plaintiff that his U-visa application met the prima facie eligibility requirements under 8 C.F.R. § 214.14(b). That prima facie determination, while important, is not too difficult to obtain. (Grismore Decl. at 4-5). Still, this news prompted Plaintiff to ask about another potential stay, but ICE indicated it would deny that too, apparently citing "the absence of evidence that [Plaintiff]'s presence in the country was necessary for the investigation or the prosecution of qualifying criminal activity underlying his [U-visa] petition." (Compl. at 26-27). In fact, a U-visa applicant does not have to be in the United States to obtain the visa, although the procedures are different for U-visa grantees living abroad. See 8 C.F.R. § 214.14(c)(5)(i)(B).
In denying Plaintiff's stay requests, ICE never shared its reasons or disclosed what considerations influenced its decision.[3] But as a matter of procedure, if an ICE field office wants to remove a noncitizen whom USCIS has found is prima facie eligible for a U-visa, the field office must obtain approval from ICE's Enforcement and Removal Operations (ERO) headquarters in *1214 Washington, DC. (Venturella Memo. at 2-3). The Los Angeles ICE field office did that here, and ERO Headquarters approved Plaintiff's removal in March 2018 despite his pending U-visa application. (ECF No. 39 at 12). Facing imminent removal, Plaintiff filed this lawsuit in April 2018 and obtained a temporary restraining order against his removal until the Court decided his preliminary injunction motion. (ECF No. 9).
III.
DISCUSSION
If Defendants are right, the Court has no jurisdiction over this case, much less the power to issue a preliminary injunction. And that would be true for both Plaintiff's federal habeas petition and his APA complaint. See 8 U.S.C. § 1252(g) (jurisdictional bar applies "notwithstanding any other provision of law," including 28 U.S.C. § 2241 ); 5 U.S.C. § 701(a)(1) (incorporating other jurisdiction-stripping statutes as a limit on APA complaints).[4] Thus, the Court must first answer the overriding jurisdictional question whether section 1252(g) applies to Plaintiff's claim. See Fed. R. Civ. P. 12(h)(3) ; Steel Co. v. Citizens for a Better Env't , 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).
As previewed above, section 1252(g) eliminates federal court jurisdiction (unless provided elsewhere in section 1252 itself) over any "cause or claim" that "aris[es] from" a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).[5] Despite the apparent breadth of that text, the Supreme Court explained in AADC that section 1252(g) does not "cover[ ] the universe of deportation claims" but "is much narrower." 525 U.S. at 482, 119 S.Ct. 936. The "mention of three discrete events along the road to deportation," the Court clarified, was not "a shorthand way of referring to all claims arising from deportation proceedings." Id. It has thus cautioned against "interpret[ing] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." Jennings v. Rodriguez , --- U.S. ----, 138 S.Ct. 830, 841, 200 L.Ed.2d 122 (2018).
But at the same time, the Supreme Court has emphasized that the "discrete acts of 'commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders," AADC , 525 U.S. at 483, 119 S.Ct. 936, occupy "a special province of the Executive-its prosecutorial discretion." Id. at 489, 119 S.Ct. 936. However narrowly construed, section 1252(g) still protects a meaningful set of immigration enforcement decisions that represent "the initiation or prosecution of various stages in the deportation process." Id. at 483, 119 S.Ct. 936. As the Court explained, before Congress amended the INA to add provisions like section 1252, immigration officials regularly "decline[d] to institute proceedings, terminate[d] proceedings, or decline[d] to execute a final order of deportation" as "a *1215 commendable exercise in administrative discretion." Id. at 484, 119 S.Ct. 936 (quoting 6 C. Gordon, S. Mailman, & S. Yale-Loehr, Immigration Law and Procedure § 72.03[2][h] (1998) ). But "the INS's exercise of this discretion opened the door to litigation in instances where the INS chose not to exercise it." Id. That led courts to review discretionary immigration enforcement decisions indistinguishable from what Plaintiff attacks here: the "refusal to stay deportation" and similar "execution[s] of removal order[s]." Id. at 485, 119 S.Ct. 936 (citing illustrative cases). In other words, Congress enacted section 1252(g), at least in part, to restore protection against judicial scrutiny of immigration enforcement decisions-like the refusal to stay deportation-where "the Executive has the discretion to abandon the endeavor." Id. at 483, 119 S.Ct. 936.[6]
Viewed against that legal backdrop, the jurisdictional question here becomes easy to answer: a challenge to ICE's refusal to stay removal is the paradigmatic claim arising from a decision to execute a removal order. If ICE's enforcement discretion is to mean anything, it must include the discretion to decide whether and when to start removal proceedings and execute removal orders. See Jimenez-Angeles v. Ashcroft , 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g), which removes our jurisdiction over 'decision[s] ... to commence proceedings' to include not only a decision in an individual case whether to commence, but also when to commence, a proceeding."). That is why, as the Ninth Circuit recently observed, a "claim that the Attorney General should have exercised discretion to delay [a] removal" would arise from the "execution of the removal order" under section 1252(g). Arce v. United States , 899 F.3d 796, 800 (9th Cir. 2018). Not surprisingly, then, courts have had no difficulty concluding that denials of stays of removal-even with pending U-visa applications-are unreviewable under section 1252(g). See, e.g., Alegria-Zamora v. U.S. Dep't of Homeland Sec. , 2018 WL 1138280, at *2 (D. Kansas Mar. 2, 2018) (denying a request to enjoin execution of removal order while plaintiff's U-visa application was pending); Mingrone v. Adducci , 2017 WL 4909591, at *3-6 (E.D. Mich. July 5, 2017) (recognizing that a claim challenging removal while U-visa application was pending is barred by § 1252(g) because it *1216 "arises from ICE's execution of the final removal order").
As these cases show, the refusal to stay removal cannot be-as Plaintiff contends-a legally-distinct decision somehow divisible from the decision to execute removal. (ECF No. 15 at 3). That is like saying the decision not to sit down is distinct from the decision to stand up. See Jennings , 138 S.Ct. at 840-41 & n.3 (shunning a reading of capacious phrases like "arising from" with "uncritical literalism" that would lead to absurd results). So, no matter how Plaintiff tries to parse it, the decision to stay-or not stay-removal is intrinsic to the decision to execute a removal order. See Garcia-Herrera v. Asher , 585 Fed. App'x 439, 440 (9th Cir. 2014) (challenge to "ICE's decision not to delay his removal ... constitutes a challenge to ICE's decision to execute a removal order"); Pomaquiza , 2017 WL 4392878, at *2 ("[A] denial of a stay is part-and-parcel of the decision to execute a removal order."); Aziz v. Chadbourne , 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("Any stay of the final order of removal would squarely interfere with the execution of the removal order.") (internal alterations omitted).
The cases cited by Plaintiff, where courts identified the kinds of interstitial claims not barred by section 1252(g), do not compel a different conclusion. For example, section 1252(g) does not take away jurisdiction to "consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question-a description of the relevant law-forms the backdrop against which the Attorney General later will exercise discretionary authority." United States v. Hovsepian , 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc); see also Arce , 899 F.3d at 801 ("Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated."). But that rule does not help Plaintiff because there is no background legal question at issue here as there was in Hovsepian . See 359 F.3d at 1156-57 (holding that § 1252(g) did not bar legal claim attacking retroactive application of immigration statute to a previously non-deportable offense). Plaintiff does not contend-nor could he-that ICE lacked the legal authority to refuse his stay request; rather, he contends that ICE's exercise of discretion should have come out in his favor.
Plaintiff's claim is also unlike the "general collateral challenges" to removal that are independent of the decision to commence proceedings, adjudicate cases, or execute removal orders. Walters v. Reno , 145 F.3d 1032, 1052 (9th Cir. 1998). In Barahona-Gomez v. Reno , 236 F.3d 1115 (9th Cir. 2001), for instance, the court reviewed a challenge to a BIA directive that indefinitely prohibited IJs from considering additional applications for suspension of deportation. Id. at 1117-18. That challenge, the court held, was not covered by section 1252(g) because it attacked a "decision[ ] or action[ ] that occur[red] during the formal adjudicatory process"-not the precipitating "decision to adjudicate" itself. Id. at 1120-21. In other words, section 1252(g) did not bar the collateral claim there because the court could decide it independent of the merits of the government's initial decision to adjudicate, which had already been made. See id. That adjudication decision, as a discrete act of prosecutorial discretion, could remain intact without foreclosing judicial review of actions made durin g the adjudication of the case.[7]
*1217 By contrast, Plaintiff's claim cannot be decided independent of-and thus is not collateral to-ICE's choice to execute his removal. See Viana v. President of the U.S. , 2018 WL 1587474, at *2 n.1 (D.N.H. Apr. 2, 2018) (claims that "are not independent of or collateral to the decision to execute the removal order ... arise from that decision for purposes of § 1252(g)") (relying on Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec. , 510 F.3d 1, 11 (1st Cir. 2007) ); see also Humphries v. Various Fed. USINS Emps. , 164 F.3d 936, 943 (5th Cir. 1999) (claims "connected directly and immediately" with a decision listed in § 1252(g)"are included within the definition of 'arising from' "). If Plaintiff wins, ICE must stay removal; if Plaintiff loses, ICE will almost certainly carry it out. Either way, entertaining Plaintiff's claim would require judicial second-guessing of ICE's discretionary decision of whether and when to execute removal-the very outcome that section 1252(g) precludes.
Nor can Plaintiff sidestep section 1252(g) by describing his claim as an attack on ICE's failure to follow its internal guidance, as if to make it seem like a reviewable collateral challenge or a severable legal question. See, e.g., Pomaquiza v. Sessions , 2017 WL 4392878, at *3 (D. Conn. Oct. 3, 2017) ("Nor is the reasoning any different if [plaintiff]'s claim is re-framed as a challenge to the government's procedures that govern whether to deny a stay of removal, as distinct from a direct challenge to the decision itself denying a stay of removal. Both types of claims equally arise from the decision to execute the order of removal[.]") (emphasis in original). Whether and how ICE followed its discretion-guiding policies can only matter if the Court has jurisdiction to review such a discretionary determination in the first place. Otherwise, the underlying argument in support of a claim becomes conflated with the reviewability of that claim and puts the merits question before the jurisdictional one.[8]
Finally, Plaintiff cannot rely on Kwai Fun Wong v. United States , 373 F.3d 952 (9th Cir. 2004), to support jurisdiction. Unlike here, the plaintiff's claims in that case challenged immigration agency "actions that occurred prior to any decision to 'commence proceedings.' " Id. at 965 (emphasis in original). Those claims could not have temporally arisen from a decision to "commence proceedings" since such a decision had not even been made yet. See id. (citing Humphries , 164 F.3d at 944 ); see also AADC , 525 U.S. at 482, 119 S.Ct. 936 (observing that "decisions to open an investigation [and] to surveil the suspected violator," which occur before commencement of proceedings, could not be barred by § 1252(g) ). That is also why section 1252(g) has not been an obstacle to the recent cases challenging the rescission of the federal government's DACA program: no removal "proceedings" had yet "commenced" against any individuals in those cases. See, e.g., NAACP v. Trump , 298 F.Supp.3d 209, 223-24 (D.D.C. 2018) ; Casa De Maryland v. DHS , 284 F.Supp.3d 758, 769-70 (D. Md. 2018) ;
*1218 Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec. , 279 F.Supp.3d 1011, 1031-32 (N.D. Cal. 2018) ; Vidal v. Duke , 295 F.Supp.3d 127, 152-54 (E.D.N.Y. 2017). Unlike those cases, there is no temporal disconnect here.[9]
IV.
CONCLUSION
For all these reasons, the Court lacks jurisdiction to review Plaintiff's claim, whether couched as a federal habeas petition or an APA complaint. Plaintiff's claim challenges ICE's refusal to grant a discretionary stay of removal and thus unavoidably arises from its decision to execute a removal order. Section 1252(g) of the INA removes the Court's jurisdiction to review that discretionary enforcement decision. Therefore, the temporary restraining order (ECF No. 9) is dissolved, the request for a preliminary injunction (ECF No. 11) is denied, and the Complaint and Petition (ECF No. 1) are ordered dismissed. Judgment dismissing this action for lack of jurisdiction will be entered accordingly.[10]
IT IS SO ORDERED.

If he had filed a U-visa application sooner, Plaintiff could have moved to terminate or continue removal proceedings to await adjudication of the pending application. See 8 C.F.R. § 214.14(c)(1)(i). Plaintiff tried to reopen proceedings in 2018, shortly before filing this lawsuit, but the BIA denied that request as untimely and for lack of jurisdiction. (ECF No. 18-2 at 2). Thus, this is not a case involving newly-discovered facts that postdated the initial removal proceedings in a way that may require the availability of federal habeas review. See Singh v. Gonzales , 499 F.3d 969, 979-80 (9th Cir. 2007).

USCIS may grant no more than 10,000 U-visas per year, and each year generates a long waiting list for eligible recipients. See 8 C.F.R. § 214.14(d)(1)-(2). Based on current estimates, it may take another two or more years before Plaintiff will learn whether he is eligible and, even then, he may still have to wait longer to get the visa. (Grismore Decl. at 4, ECF No. 39-1).

In supplemental briefs requested by the Court, the government suggested that Plaintiff's criminal history may have played a part. (ECF No. 39 at 10). Even if true, that is not material to the Court's jurisdictional analysis.

In addition to an APA claim, the Petition and Complaint alluded to a due process claim, although counsel for Plaintiff conceded at the preliminary injunction hearing (ECF No. 25) that Plaintiff is not pressing a constitutional challenge. But even if he were, it would not affect the Court's jurisdictional analysis. See Kucana v. Holder , 558 U.S. 233, 238 n.1, 130 S.Ct. 827, 175 L.Ed.2d 694 (2010) ; Elgharib v. Napolitano , 600 F.3d 597, 602 (6th Cir. 2010) ; Sissoko v. Rocha , 509 F.3d 947, 950-51 (9th Cir. 2007).

Because Congress transferred the Attorney General's immigration enforcement responsibilities to the Secretary of the Department of Homeland Security (DHS) in 2002, see Clark v. Martinez , 543 U.S. 371, 375 n.1, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005), references to "Attorney General" in the statute now mean the Secretary of DHS.

Focusing on the "particular evil" that section 1252(g) is directed at-"attempts to impose judicial constraints upon prosecutorial discretion," AADC , 525 U.S. at 485 n.9, 119 S.Ct. 936 -can help determine, functionally, when a claim "arises from" an unreviewable discretionary decision as opposed to a reviewable immigration action that just happens to be related to a protected decision. If the agency's decision to commence, adjudicate, or enforce removal that is under challenge is "particularly ill-suited to judicial review," id. at 489-90, 119 S.Ct. 936 (quoting Wayte v. United States , 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) ), because it would require judicial second-guessing of "factors which are peculiarly within [the agency's] expertise," Heckler v. Chaney , 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the claim under review would be most likely to "arise from" a discretionary act protected by section 1252(g). If, on the other hand, the claim under review is whether the agency "disregard[ed] legislative direction in the statutory scheme that [it] administers," id. at 833, 105 S.Ct. 1649, "relied on factors which Congress had not intended it to consider," Nat'l Ass'n of Home Builders v. Defenders of Wildlife , 551 U.S. 644, 658, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007), or "consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities," Heckler , 470 U.S. at 833 n.4, 105 S.Ct. 1649 (internal quotation omitted), the challenge to an agency decision-even if an enumerated action in section 1252(g) is a but-for cause of the alleged harm-does not "invade a special province of the Executive," AADC , 525 U.S. at 489, 119 S.Ct. 936, and so is least likely to "arise from" a protected act of prosecutorial discretion.

This reasoning helps explain the existence of jurisdiction in DACA cases where individual removal proceedings have begun. See, e.g., Inland Empire-Immigrant Youth Collective v. Duke , 2017 WL 5900061, at *4-5 (C.D. Cal. Nov. 20, 2017). A challenge to revocation of an individual's DACA status at that point can be reviewed independent of the decision to commence proceedings. It is also reviewable without regard to the decision to adjudicate because "an immigration judge has no jurisdiction to reinstate DACA status, or to authorize an application for renewal of DACA status." Torres v. U.S. Dep't of Homeland Sec. , 2017 WL 4340385, at *4-6 (S.D. Cal. Sept. 29, 2017).

This not to say, however, that how ICE executes a removal is categorically immune from judicial oversight. For instance, while detention is often a necessary step in removal, ICE cannot immunize questionable detention-related decisions under the pretense of a routine enforcement of removal orders. See, e.g., Nak Kim Chhoeun v. Marin , 306 F.Supp.3d 1147, 1158-59 (C.D. Cal. 2018).

The remaining cases Plaintiff relies on require no extended discussion. Those cases, like Barahona-Gomez , found jurisdiction because the courts could independently review the collateral claims without questioning or invalidating the specific enforcement actions listed in section 1252(g). See Alcaraz v. INS , 384 F.3d 1150, 1161 (9th Cir. 2004) (reviewing a challenge to BIA's failure to administratively close removal proceedings so that petitioners could pursue alternative processes to seek relief from removal); Sulit v. Schiltgen , 213 F.3d 449, 452-53 (9th Cir. 2000) (reviewing due process claims alleging that green cards were seized without hearing and that proper notices of deportation-related orders were not received); Castellar v. Nielsen , 2018 WL 786742, at *11 (S.D. Cal. Feb. 8, 2018) (holding that a claim challenging prolonged delay in detainee's first hearing before an IJ was not barred by § 1252(g) ); Cardona v. United States , 2017 WL 3337144, at *5-6 (S.D. Cal. Aug. 4, 2017) (reviewing a federal tort claim by a wrongfully-deported permanent resident based on ICE's failure to conduct mandatory fingerprint-matching analysis before deportation); Ilyabaev v. Kane , 847 F.Supp.2d 1168, 1174-75 (D. Ariz. 2012) (reviewing a claim that USCIS failed to provide required notice and opportunity to respond before revoking worker visa).

All parties have consented to proceed before the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). (ECF Nos. 27, 29, 31, 34).