NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0500n.06

No. 19-2148

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Aug 26, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DED RRANXBURGAJ, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHAD WOLF[1], et al., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: GIBBONS, GRIFFIN, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Ded Rranxburgaj filed this suit after United States Immigration and Customs Enforcement (ICE) denied his request for a temporary stay of his removal order. He claims that ICE's decision to deny his application on procedural grounds was contrary to law. However, the district court dismissed Rranxburgaj's complaint for lack of subject-matter jurisdiction, and although our reasoning differs, we agree that the lower court lacked jurisdiction and affirm.

I.

In 2001, plaintiff Ded Rranxburgaj and his wife Flora Rranxburgaj fled their native country of Albania and sought asylum in the United States. However, their asylum application was denied, and in 2006 an Immigration Judge ordered them removed. Three years later, the

---

[1]Chad Wolf, as the acting Secretary for the Department of Homeland Security has been automatically substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

Board of Immigration Appeals dismissed their appeal. But while those proceedings were ongoing, Flora developed multiple sclerosis. As a consequence, the government placed the Rranxburgajs under orders of supervision. *See* 8 C.F.R. § 241.5. Thus, while the government could still execute their removal orders at any time, the Rranxburgajs were allowed to continue living in the United States.

Things changed in October 2017 when plaintiff reported for one of his regular check-ins with ICE in Detroit, Michigan. An agent with ICE told Rranxburgaj that the agency intended to remove him in January 2018 and instructed him to purchase a plane ticket. Plaintiff complied, purchasing airfare to Albania with a January 25, 2018 departure date, which he presented to ICE at a subsequent check-in on November 30, 2017. About a week later, Rranxburgaj filed an application for a temporary stay of removal. Specifically, he requested a one-year stay of removal, citing Flora's "advanced" multiple sclerosis. He explained that Flora was "entirely dependent on [him] for everything, including the most basic needs." If he were removed, Rranxburgaj stated, it would "be a death sentence for [his] wife." The application included his wife's medical records, thirteen years' of tax returns, and more than eighty letters of support.

Weeks passed, but ICE did not act on Rranxburgaj's application. Less than three weeks before his scheduled removal, Rranxburgaj attended another check-in, and yet ICE did not address his application. Instead, the agency told him only to return for another check-in, eight days before his removal date. Rather than return for that last check-in, Rranxburgaj moved himself and his family into the Central United Methodist Church in Detroit, Michigan and claimed sanctuary. Church leaders held a press conference, and Rranxburgaj made a public statement that he was seeking sanctuary from removal to care for his wife.

The following day, ICE announced that it considered Rranxburgaj a "fugitive" based on his failure to attend the check-in as scheduled. The agency also sent a letter to Rranxburgaj's counsel, which indicated that it had denied Rranxburgaj's application for a temporary stay of removal as "moot," because his "willful failure to comply with the terms of his supervised release" rendered him a "fugitive from ICE." Rranxburgaj asked ICE to reconsider, but the agency held firm to its position that Rranxburgaj's failure to report disentitled him from discretionary relief.

Rranxburgaj then filed suit in the United States District Court for the Eastern District of Michigan in June 2018 to "challenge the refusal" of the agency to "adjudicate on the merits his application for a stay of removal." He invoked the Administrative Procedure Act, claiming that the court had authority to compel agency action which had been "unreasonably withheld or delayed[,]" and asserted that the court should set aside the agency determination that he was a fugitive as contrary to law.[2] As relief, he asked the court to enjoin the defendants from removing him, declare the agency's actions arbitrary and capricious, and issue an injunction compelling the defendants to consider the merits of his stay application.

ICE moved to dismiss Rranxburgaj's suit for lack of subject-matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b). It relied on 8 U.S.C. § 1252(g), which provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from

---

[2]Plaintiff also sought a writ of mandamus on the equitable theory that he had a right to a timely merits decision on his stay application. Because he does not raise any argument related to this claim in his statement of issues or the body of his brief on appeal, we deem it forfeited. *See, e.g., United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016).

the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The agency reasoned that § 1252(g) applied because the action arose "from the decision to deny [plaintiff's] application for a stay, and hence execute his removal order." The district court, however, granted ICE's motion to dismiss for lack of jurisdiction on other grounds. It ruled that 8 U.S.C. § 1252(a)(2) and (a)(5) deprived it of jurisdiction because ICE's denial of Rranxburgaj's request for a stay was directly related to his final removal order. The district court then entered judgment, and Rranxburgaj timely appealed.

## II.

We review de novo a district court's dismissal of a complaint for lack of subject-matter jurisdiction. *Bucholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020).

At the outset, the parties appear to agree that the federal question statute, 28 U.S.C. § 1331, confers jurisdiction to federal courts to review agency action under the terms of the Administrative Procedure Act. *See, e.g.*, *Jama v. Dep't of Homeland Security*, 760 F.3d 490, 494 (6th Cir. 2014). They disagree, however, on whether § 1252(g) of the REAL ID Act of 2005 divested the district court of subject-matter jurisdiction over Rranxburgaj's claims brought under that authority.

The district court relied on two provisions of the REAL ID Act, 8 U.S.C. § 1252(a)(2) and (a)(5), to hold that it lacked jurisdiction over Rranxburgaj's claims. However, those provisions reflect Congress's decision to "channel judicial review of an alien's claims *related to his or her final order of removal* through a petition for review at the court of appeals." *Elgharib v. Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010) (emphasis added). In his complaint, Rranxburgaj did not challenge the validity of his final order of removal. He instead challenged only the agency's denial, on procedural grounds, of his application for a temporary stay of

removal. That does not fall within the ambit of § 1252(a)(2) and (a)(5). *See id.* at 605. On appeal, the parties agree that the district court was mistaken to rely on § 1252(a)(2) and (a)(5). They instead focus on 8 U.S.C. § 1252(g), which further refines the subject-matter jurisdiction of the federal courts over claims arising out of administrative action in the immigration setting. More specifically, they contest whether Rranxburgaj's claims "aris[e] from the decision or action by the Attorney General to . . . execute [a] removal order[]." 8 U.S.C. § 1252(g). We hold they do and, therefore, we lack jurisdiction.

First, we acknowledge that in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) (hereinafter *AADC*), the Supreme Court interpreted the operative language of § 1252(g) narrowly, reasoning that the jurisdictional bar applied only to the three "discrete actions," *id.* at 482, listed in the statute: "commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders[.]" *Id.* at 483. The Court reasoned that Congress had good reason to shield these actions from judicial review because the government had increasingly begun exercising its discretion to abandon deportation and removal actions, either for humanitarian reasons or for its own convenience. "Since no generous act goes unpunished, however, the [agency's] exercise of this discretion opened the door to litigation in instances where the [agency] chose *not* to exercise it." *Id.* at 484. Therefore, the Court reasoned that § 1252(g) "seem[ed] clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485. The *AADC* Court thus concluded that the petitioners' challenge to the Attorney General's decision to "commence proceedings" against them fell squarely within § 1252(g)'s jurisdictional bar. *Id.* at 492.

A few years later, our court interpreted *AADC* in considering whether § 1252(g) prevented a district court from exercising jurisdiction over a petition for a writ of habeas corpus, challenging the decision of the Attorney General to deny a request for a temporary stay of deportation. *Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004). We held that it did. The court began with the observation that Moussa "specifically challenge[d] the Attorney General's refusal . . . to grant [him] a stay of deportation." *Id.* at 553. This, we said, was "a decision that is wholly within the discretion of the Attorney General" and as such, it was "directly part of a decision to execute a removal order." *Id.* at 554. Accordingly, we held that Moussa's attempt to "enjoin the Attorney General from executing a valid order of deportation" was "protected from subsequent judicial review under § 1252(g)."[3] *Id.*

Our review did not end there because at the time, the Supreme Court interpreted § 1252(g) to exclude habeas petitions raising colorable constitutional or statutory claims under 28 U.S.C. § 2241. *See INS v. St. Cyr*, 533 U.S. 289 (2001). Therefore, the "final part [of] our inquiry" was whether Moussa had asserted a colorable claim under the standard announced in *St. Cyr. Moussa*, 389 F.3d at 554–55. In the end, we concluded that *Moussa* had not presented such a claim and affirmed the district court's judgment for lack of subject-matter jurisdiction. *Id.* at 555. Importantly, this exception to the jurisdictional bar in § 1252(g) no

_____

[3]On this point, *Moussa* appears consistent with every other circuit to have considered the issue. *See, e.g.*, *Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) ("A request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order."); *Garcia-Herrera v. Asher*, 585 F. App'x 439, 440 (9th Cir. 2014) (mem. op.) ("[Petitioner] challenges ICE's decision not to delay his removal pending the adjudication of his application for relief under DACA. . . . [T]his constitutes a challenge to ICE's decision to execute a removal order."); *Barrios v. Att'y Gen.*, 452 F. App'x 196, 198 (3d Cir. 2011) ("The BIA's denial of a stay of removal falls within its power to execute a removal order."); *McCloskey v. Keisler*, 248 F. App'x 915, 917 (10th Cir. 2007) ("The Government argues that we lack jurisdiction to review Ms. McCloskey's petition because the essence of her challenge is ICE's refusal to continue deferring her removal. We agree.").

longer exists. "The REAL ID Act was enacted . . . in response to the Supreme Court's decision in *INS v. St. Cyr* . . . which held that under 28 U.S.C. § 2241, federal courts have jurisdiction over habeas petitions brought by aliens in custody pursuant to a deportation order." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 746–47 (6th Cir. 2006) (footnote and citation omitted); *see also Jaber v. Gonzales*, 486 F.3d 223, 230 (6th Cir. 2007) ("The REAL ID Act of 2005 clearly eliminated a habeas petition as a means for judicial review of a removal order, abrogating any holding in *St. Cyr* to the contrary.").

Turning back to the matter at hand, the government argues that *Moussa* controls, and that the district court therefore lacked subject-matter jurisdiction over Rranxburgaj's complaint. We agree. By challenging ICE's decision to deny his request for a stay of removal, Rranxburgaj is seeking to enjoin the Attorney General from executing a valid order of removal. *Moussa* held that decision is "protected from subsequent judicial review under § 1252(g)," so the district court lacked jurisdiction over plaintiff's complaint. 389 F.3d at 554.

## III.

Rranxburgaj offers several arguments for why *Moussa* does not resolve this case. They are unpersuasive.

First, he focuses on the last section of *Moussa*, arguing that he has raised a pure question of law regarding ICE's decision to disentitle him to discretionary relief, so he may avoid § 1252(g). But as we have already explained, *Moussa* relied on *St. Cyr*, which is no longer precedent.[4] We are aware of no other exception to § 1252(g) that would allow for review of pure

---

[4]Along these same lines, Rranxburgaj's reliance on *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc) is unpersuasive. That case also predates the REAL ID Act, and we find no support beyond *St. Cyr* for its assertion that courts have jurisdiction for "consideration of a purely legal question," which would otherwise fall within the scope of § 1252(g). *Id.* at 1155–56. To the extent that *Hovsepian* relied on *Spencer Enterprises Inc. v.*

questions of law. *Cf. Hamama v. Adducci*, 912 F.3d 869, 875 (6th Cir. 2018) (holding that § 1252(g) does not violate the Suspension Clause).

Plaintiff also cites *Arce v. United States*, 899 F.3d 796 (9th Cir. 2012) (per curiam), as authority that the district court had jurisdiction to hear a legal challenge to the Attorney General's authority to execute a removal order. We find *Arce* distinguishable. There, the government's violation of a judicial stay of removal resulted in an alien's removal from the United States. *Id.* at 799. The alien plaintiff brought a Federal Tort Claims Act claim for damages suffered as result of the removal. The Ninth Circuit held that this claim fell outside the scope of § 1252(g) because "the stay of removal temporarily suspend[ed] the source of the [government's] authority to act." *Id.* at 800 (first alteration in original, internal quotation marks and citation omitted). In other words, while the stay was in place, the government "totally lack[ed] the [statutory] discretion to effectuate a removal order." *Id.* at 800–01. Therefore, the Ninth Circuit concluded that the government's "decision or action to violate a court order staying removal . . . f[ell] outside" of § 1252(g)'s "jurisdiction-stripping reach." *Id.* at 800. Here, the government violated no such order, and Rranxburgaj's challenge instead goes directly to ICE's decision to execute an order of removal. Accordingly, we are not persuaded by *Arce* that the district court had subject-matter jurisdiction.[5]

Finally, Rranxburgaj argues that we should disregard *Moussa* either because it runs afoul of *AADC*'s narrow interpretation of § 1252(g) or because it is distinguishable. We disagree. Our court considered and applied *AADC* in *Moussa*, and we view that decision to be a faithful

---

*United States*, 345 F.3d 683, 689–90 (9th Cir. 2003), for that proposition, it is contrary to our precedent. *See CDI Info. Servs., Inc. v. Reno*, 278 F.3d 616, 620 (6th Cir. 2002).

[5]We also observe that the Eighth Circuit came to a contrary conclusion on an identical claim in *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (holding that a claim challenging the execution of a removal order, in violation of a judicial stay, fell within § 1252(g)).

application of the Supreme Court's guidance. Nor is *Moussa* distinguishable; we discern no principled difference between the denial of an application for a stay of removal on the merits and a denial on procedural grounds. In either case, the decision to deny a temporary stay of removal arises directly from the decision of the Attorney General to execute a removal order, so it is rendered unreviewable by § 1252(g).

## IV.

Based on the record before us, no one could dispute that Ded Rranxburgaj has made significant contributions to our society since first arriving in the United States nineteen years ago. He has raised his children here, legally worked and paid taxes, and committed no crime. Moreover, he has demonstrated admirable devotion to his wife as she fights a terrible illness. But as a court of limited jurisdiction, we adjudicate cases as Congress sees fit to authorize. In the REAL ID Act, Congress decided that, as a matter of public policy, we do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order—like the ones presented in this suit. Accordingly, whether or not we agree with ICE's decision to execute plaintiff's removal order (and deny his application to temporarily stay that order), those decisions are not reviewable by the federal courts.

The judgment of the district court is therefore affirmed.