**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1468

YEISON LEON ORTIZ,

Plaintiff - Appellant,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security;
PAMELA JO BONDI, United States Attorney General,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Stephanie A. Gallagher, District Judge.  (1:22-cv-00647-SAG)

Submitted:  January 16, 2025                          Decided:  May 14, 2025

Before NIEMEYER, GREGORY, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Niemeyer
and Judge Quattlebaum joined.

**ON BRIEF:**  Timothy W. Davis, LAW OFFICE OF TIMOTHY W. DAVIS, LLC,
Baltimore, Maryland, for Appellant.  Brian M. Boynton, Principal Deputy Assistant
Attorney General, William C. Peachey, Director, William C. Silvis, Assistant Director,
Aneesa Ahmed, Office of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Yeison Leon Ortiz challenges his deportation from the United States as violative of the Due Process Clause of the U.S. Constitution and Administrative Procedure Act ("APA"). The district court dismissed his complaint on the basis that it lacked jurisdiction to hear "a challenge of the [government's] execution of his removal order," pursuant to the jurisdiction-stripping statute at 8 U.S.C. § 1252(g). J.A. 125.

We agree with the district court's finding that it lacked jurisdiction, but for different reasons. As the district court correctly identified, "[Ortiz] has not identified any such policies or regulations that plausibly affected his removal." *Id*. In our view, this is better understood as demonstrating that Ortiz has failed to establish that he has standing to challenge the stay regulations. That is, Ortiz has failed to allege an "injury in fact" that is "traceable" to the challenged regulations, particularly because even alternative regulations that Ortiz concedes would plainly satisfy constitutional and statutory requirements would not have prevented his removal. For this reason, we affirm the district court's order dismissing Ortiz's complaint for lack of jurisdiction.

## I.

Ortiz entered the United States at the age of fifteen. J.A. 16. He was briefly detained at the border and placed in removal proceedings, but he was not detained permanently. *Id*. In 2015, he failed to appear at an immigration hearing and was "ordered removed in absentia." *Id*. Several years later, Ortiz was arrested on criminal charges, and the government sought to remove him pursuant to the 2015 removal order. *Id*. His deportation

2

was scheduled for April 1, 2020; that same day, counsel for Ortiz filed an emergency motion to stay removal and a motion to reopen proceedings in immigration court. *Id*. At 11:08 am, an immigration judge ("IJ") signed the stay order. *Id*. But because immigration court cases filed prior to 2018 did not transition to electronic filing, the IJ placed the stay order in the outgoing mailbox. J.A. 20–21. At 11:10am, Ortiz's flight to Honduras completed final boarding and departed the gate. J.A. 16–17. Neither the government nor Ortiz learned of the stay order until at least several days after Ortiz had already arrived in Honduras. J.A. 20–21.

From Honduras, Ortiz has engaged in numerous legal proceedings seeking to force the government to facilitate his return to the United States. *See Ortiz v. Mayorkas*, No. 20-7028, 2022 WL 595147, at *1 (4th Cir. Feb. 28, 2022). However, the various administrative agencies and courts to have considered these claims all ruled against him.

Ortiz filed a new complaint, challenging the stay procedures governing the deportation process as violative of the Due Process Clause and the APA. He specifically challenges the stay regulations at 8 C.F.R. §§ 241.6(c) and 1241.6(c), which provide that a stay ceases to have effect when the noncitizen "has been placed aboard an aircraft or other conveyance for removal and the normal boarding has been completed." J.A. 22; *see also* J.A. 19–23. He asserts that these procedures have "not kept up" with changes in how immigration authorities execute orders of removal, primarily the shift from purchasing seats on passenger planes to the use of planes entirely within the control of the United States government. J.A. 23. However, nowhere in the complaint does Ortiz allege that, had these regulations complied with the constitutional and statutory provisions that they

3

allegedly violate, Ortiz's deportation would not have improperly occurred.  In fact, he specifically alleges that it is electronic filing, rather than use of the mail system, that would have addressed any illegality in the procedures used for his removal.  J.A. 21.

The district court dismissed Ortiz's case for lack of jurisdiction.  As the court noted, "[Ortiz] has not identified any such policies or regulations that plausibly affected his removal."  J.A. 125.  Nor did he "allege facts suggesting how the use of electronic filing would have ameliorated the two-minute interval between his stay order and takeoff."  *Id*.  However, rather than dismiss the case for the failure to allege a causal link between the challenged regulations and harm suffered, the district court dismissed the case as "a challenge of the Defendants' execution of his removal order . . . precluded by 8 U.S.C. § 1252(g)."  *Id.*; *but see Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *2 (4th Cir. Apr. 7, 2025) ("'There are of course many other decisions or actions that may be part of the deportation process,'" but 1252(g)'s jurisdictional bar applies only to "the Attorney General's exercise of lawful discretion to commence removal proceedings, adjudicate those cases, and execute orders of removal.").

## II.

When a district court dismisses a complaint pursuant to Rule 12(b)(1), we review its legal conclusions de novo.  *Lovo v. Miller*, 107 F.4th 199, 205 (4th Cir. 2024).  The "party invoking federal jurisdiction bears the burden of establishing its existence."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).  In determining whether subject matter jurisdiction exists, this Court is "not limited to evaluation of the grounds offered by

4

the district court to support its decision, but may affirm on any grounds apparent from the record." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (quoting *United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005)); *Helvering v. Gowran*, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.").

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). The Supreme Court has repeatedly held that a court must assure itself of Article III standing before proceeding to the merits of a case, even when not raised by the parties. *See Steel Co.*, 523 U.S. at 95; *see also Wilborn v. Mansukhani*, 795 F. App'x 157, 159 n.3 (4th Cir. 2019) ("Although neither the district court nor the parties addressed standing, because standing implicates our jurisdiction, 'it may be raised and addressed for the first time on appeal.'" (quoting *Hodges v. Abraham*, 300 F.3d 432, 443 (4th Cir. 2002))). The well-known requirements of standing are (1) injury in fact, (2) causation, in other words, that the injury is "fairly traceable to the challenged action of the defendant," and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).

5

III.

The facts alleged in the operative complaint plainly fail to establish the second element of standing: causation. Ortiz's complaint details the tragic circumstances leading to his removal after an IJ issued a stay. J.A. 28–29. However, Ortiz fails to allege how regulations that complied with due process and the APA would have prevented his removal in the mere two minutes between the issuance of a stay and takeoff. *See, e.g.*, J.A. 33.

The last-minute nature of the stay, being issued just before takeoff, presented insufficient time for even the most expeditious of notification systems to have prevented his post-stay removal. And of particular relevance, Ortiz concedes that the electronic court filing notification system in place today would plainly satisfy constitutional due process requirements. *Id.* Because he did not allege that, had this admittedly legal system been in place, government authorities would have received notice of the stay prior to takeoff, he has failed to allege that the supposed constitutional violation resulting from the use of paper filing in his case had any causal impact on his alleged harm. And he certainly does not allege that his removal was effectuated in knowing violation of any stay order, a circumstance other courts have found to provide jurisdiction for similar claims under the Federal Tort Claims Act. *See, e.g.*, *Arce v. United States*, 899 F.3d 796, 798–800 (9th Cir. 2018).[*]

---

[*] This case also differs from the several recent removal cases pending before federal courts. For example, Ortiz does not allege that he was mistakenly deported to a Salvadoran prison without any procedural protections. *See Noem v. Abrego Garcia*, No. 24A949, 2025 WL 1077101, at *2 (U.S. Apr. 10, 2025) (Statement of Sotomayor, J.) ("[T]he proper remedy is to provide Abrego Garcia with all the process to which he would have been (Continued)

6

Further, while Ortiz asserts that "the stay regulations have not kept up" with changes in deportation procedures, J.A. 35, he does not allege that the refusal to return a removed individual to the United States stems from an arbitrary and capricious policy. Again, standing for this claim relies on a showing that, but for the improperly promulgated policy, his removal would not have been effectuated in violation of a stay order. The amended complaint thus fails to establish that Ortiz's removal is "traceable" to the challenged regulations. *Lujan*, 504 U.S. at 560.

IV.

We express no opinion on the reasoning adopted by the district court. However, we similarly conclude that the court lacked jurisdiction to hear Ortiz's case. Accordingly, the judgment is

*AFFIRMED.*

---

entitled had he not been unlawfully removed to El Salvador."). Nor does this case parallel issues previously before our sister circuit, where alleged members of a Venezuelan gang were deported to that same prison without any notice or opportunity to challenge the grounds for removal pursuant to the Alien Enemies Act. *See J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *2 (D.C. Cir. Mar. 26, 2025) (Henderson, J., concurring).