**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 19-1715

———————————

SYED TAZU,
                    Appellant

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA;
DIRECTOR NEW YORK FIELD OFFICE IMMIGRATION
AND CUSTOMS ENFORCEMENT; UNITED STATES
DEPARTMENT OF HOMELAND SECURITY;
WARDEN BERGEN COUNTY JAIL

———————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:19-cv-07872)
District Judge: Honorable Esther Salas

———————————

Argued: July 9, 2020

Before: McKEE, BIBAS, and FUENTES, *Circuit Judges*

(Filed: September 14, 2020)

———————————

Aasiya F.M. Glover                    [ARGUED]
Jeremy Feigelson
Debevoise & Plimpton
919 Third Avenue
New York NY, 10022

Gregory P. Copeland
Sarah T. Gillman
Rapid Defense Network
11 Broadway, Suite 615
New York, NY 10004
    *Counsel for Appellant*

Anna Dichter
Dhruman Y. Sampat                    [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044

Enes Hajdarpasic
J. Andrew Ruymann
Office of the United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
    *Counsel for Appellees*

―――――――――

OPINION OF THE COURT

―――――――――

BIBAS, *Circuit Judge*.

In law, as in life, the path often matters as much as the destination. For an alien challenging his removal, that path begins with a petition for review of his removal order, not a habeas petition.

Syed Tazu challenged when and how the Attorney General sought to remove him. But he lost his way by doing so in the wrong proceeding in the wrong court. He filed a habeas petition, asking the District Court to stop the Attorney General from executing his valid removal order while he tries to reopen his removal proceedings and to get a Provisional Unlawful Presence Waiver. But 8 U.S.C. § 1252(g) strips us of jurisdiction to review any "decision or action by the Attorney General to … execute removal orders against any alien." And § 1252(b)(9) makes a petition for review—not a habeas petition—the exclusive way to challenge "any action taken or proceeding brought to remove an alien." Those provisions funnel Tazu's claims to the Second Circuit, not us. We will thus reverse and remand for the District Court to dismiss for lack of subject-matter jurisdiction.

Still, the wheels of justice turn elsewhere. Tazu has a petition for review pending in the Second Circuit. His removal is stayed while that litigation is pending, so he can remain with his wife and children. And we have every confidence that our

sister circuit will consider Tazu's claim that he endured ineffective assistance of counsel throughout his immigration proceedings.

## I. BACKGROUND

### A. Facts

In 1993, Tazu left his native Bangladesh, traveled to Mexico, and crossed into the United States without inspection. He promptly applied for asylum based on political persecution. Eight years later, in his removal proceeding, an immigration judge denied that application. But rather than ordering his removal, the immigration judge granted his request to depart voluntarily.

Tazu appealed to the Board of Immigration Appeals, alleging ineffective assistance of counsel. In 2003, the Board denied his appeal but gave him thirty days to depart. Because he did not leave, his grant of voluntary departure became an order of removal. Nearly six years later, immigration agents detained him to remove him.

While detained, Tazu filed his first motion to reopen his removal proceedings. The Board denied it. The Government then tried to execute the removal order by releasing him on a plane to Bangladesh. But because his passport had expired, the airline would not let him board the plane. The Government asked the Bangladeshi consulate to issue Tazu a new passport, but it seemed "[un]likel[y] that a passport w[ould] be issued in the foreseeable future." App. 536. So in 2009, the Government let him go on supervised release.

4

For the next decade, Tazu complied fully with the terms of his supervised release. He "never missed" any of his required appointments to check in with the Government. App. 6. He held a steady job, paid taxes, raised his three children, and followed the law.

During this time, he also learned of a way to stay in the United States lawfully: by getting a provisional waiver. Without one, Tazu's eventual removal would likely prevent him from reentering the United States for years. 78 Fed. Reg. 536-01, 536–38 (Jan. 3, 2013). With one, he would spend far less time separated from his family in the United States. *Id.*; *see* 8 C.F.R. §212.7(e)(4)(iv) (making aliens subject to final orders of removal, like Tazu, eligible for provisional waivers).

To get a waiver, he first needed a relative to file a Form I-130 "Petition for Alien Relative." 78 Fed. Reg. at 547–48 & n.9. Next, he needed to file a Form I-212 "Application for Permission to Reapply for Admission." *See id.* at 548 (8 C.F.R. §212.7(e)(4)(iv)). Only after the Government approved those two applications could he file a Form I-601a "Application for Provisional Unlawful Presence Waiver." *See id.* at 537 (8 C.F.R. §212.7(e)).

Tazu's family took the first of these three steps. In 2017, one of his sons, a U.S. citizen, filed a Form I-130 for him. It was approved later that year. But Tazu did not file a Form I-212 right away.

In early 2019, the Government finally got Tazu's renewed passport. Three days later, it re-detained him to execute his removal order.

## B.  Procedural history

A month later, Tazu sued the Government in the U.S. District Court for the District of New Jersey, seeking release from detention by a writ of habeas corpus and a stay of removal. He then filed his Form I-212 with the Department of Homeland Security and moved to reopen his removal proceedings with the Board based on ineffective assistance of counsel. But he lost on every front. The District Court declined to grant either a writ of habeas corpus or a stay of removal. The Department of Homeland Security denied his I-212 application. And the Board denied his motion to reopen.

Tazu appealed each of these adverse determinations. He challenged the denial of his Form I-212 before the Department of Homeland Security's Administrative Appeals Office. He challenged the Board's refusal to reopen his proceedings by petitioning for review with the Second Circuit. *See Tazu v. Barr*, No. 19-3824 (2d Cir. docketed Nov. 15, 2019). Because the Department of Homeland Security has a longstanding "forbearance policy" with the Second Circuit, Tazu will not be removed until that Court resolves his petition for review. *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).

## C.  This appeal

That brings us to this appeal from the District Court's denial of habeas corpus relief or a stay of removal. On appeal, Tazu raises two challenges to the execution of his removal order. Though he couches his claims in both statutory and constitutional terms, he clothes both in the garb of due process.

6

First, he challenges the timing of his removal, asserting that removing him now would interfere with his due process right to stay here while applying for a provisional waiver and appealing the denial of his motion to reopen. Second, he challenges his detention, arguing that the Government violated its own regulations and thus due process by detaining him without notice, a revocation interview, and an orderly departure.

To decide whether the District Court had jurisdiction, we construe 8 U.S.C. § 1252(b)(9) and (g). "Whether or not the District Court had jurisdiction, we have jurisdiction under 28 U.S.C. § 1291 to review its decision" about subject-matter jurisdiction. *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 182 (3d Cir. 2020). We review de novo. *Id.* at 182–83.

## II. THE DISTRICT COURT LACKED JURISDICTION TO REVIEW TAZU'S TIMING CHALLENGE

Tazu first argues that the Attorney General cannot execute his removal order now. He asks us to hold that the Attorney General must wait until later—after he finishes exhausting the provisional-waiver process and appealing the denial of his motion to reopen. Though his challenge may be a fine one, it does not belong in this proceeding. He can raise it elsewhere and must do that in his petition for review before the Second Circuit.

### A. 8 U.S.C. § 1252(b)(9) and (g) channel review of three specific actions to a single court of appeals

In 1996, Congress amended the Immigration and Nationality Act to add § 1252(b)(9) and (g). It aimed to prevent removal

proceedings from becoming "fragment[ed], and hence prolong[ed]." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) (*Am.-Arab*). And it did so by funneling "most claims that even relate to removal" into a single proceeding, which begins with a petition for review of a final removal order in the appropriate court of appeals. *E.O.H.C.*, 950 F.3d at 180, 184.

Congress used complementary provisions to funnel removal-related claims away from district courts and into a petition for review in a single court of appeals. *See* § 1252(b)(9), (g). Sometimes, the provisions overlap. *See Am.-Arab*, 525 U.S. at 483. But even the narrower one, § 1252(g), plays an important role. It directs other courts not to hear challenges to three of the Attorney General's "decision[s] or action[s]": those that "commence proceedings, adjudicate cases, or execute removal orders." § 1252(g).

Section 1252(g) does not sweep broadly. It reaches only these three specific actions, not everything that arises out of them. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 840–41 (2018) (plurality opinion) (interpreting *Am.-Arab*, 525 U.S. at 482–83); *see also Garcia v. Att'y Gen. of the U.S.*, 553 F.3d 724, 729 (3d Cir. 2009). If an alien challenges one of those discrete actions, § 1252(g) funnels jurisdiction over that challenge into a petition for review in a single court of appeals. Whether the claim is constitutional or statutory, no other court of appeals has jurisdiction to hear it. *See Elgharib v. Napolitano*, 600 F.3d 597, 602, 605 (6th Cir. 2010) (collecting cases); *Sissoko v. Rocha*, 509 F.3d 947, 950–51 (9th Cir. 2007) (barring review of a Fourth Amendment false-arrest claim because

the claim "directly challenge[d] [the] decision to commence expedited removal proceedings" ); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (barring review of an alien's First Amendment retaliation claim based on the Attorney General's decision to put him into exclusion proceedings).

### B. Tazu challenges one of those three actions: the execution of his removal order

Tazu challenges the third act listed in § 1252(g): the Attorney General's "action … to … execute [his] removal order[ ]." The statute funnels his claim into his petition for review before the Second Circuit. He tries to sidestep the statute's funnel by saying that he "does not contest the discretion exercised to remove him." Pet'r's Br. 28. Though the Attorney General admittedly has discretion to execute his removal order *later*, Tazu claims, he allegedly lacks the authority to exercise that discretion *now*. But Tazu's claim cannot evade the statute's reach.

1. *The plain text of § 1252(g) covers decisions about whether and when to execute a removal order*. Tazu claims that deciding to execute a removal order *now* differs from deciding to do so *at some point*. But both are "decision[s] or action[s] … to … execute removal orders." § 1252(g). After all, "the act of deciding" means "the act of settling or terminating (as a contest or controversy) by giving judgment." *Decision*, *Webster's Third New International Dictionary* (1966). And to settle or terminate the execution of a removal order, the Attorney General must choose a date for that removal. So the discretion to decide *whether* to execute a removal order includes the

9

discretion to decide *when* to do it. *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002). Both are covered by the statute.

2. *The design of § 1252(g) shows that Tazu cannot challenge the timing of his removal here*. As the Supreme Court has noted, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Am.-Arab*, 525 U.S. at 485 n.9. It "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations." *Id.* at 485. "[I]f they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* The Attorney General may thus decide to execute Tazu's valid removal order when he chooses. The statute shields that prosecutorial discretion from judicial review apart from a petition for review.

3. *Tazu challenges the Attorney General's* discretion*, not his* authority *under the INA*. Tazu seeks to undermine that design by styling his constitutional and statutory objections as challenging not the Executive's *discretion*, but its *authority* to execute his removal order. We have held that unless the Attorney General first has authority under the Immigration and Nationality Act to remove an alien, § 1252(g) cannot shield the Attorney General's discretionary use of that authority. *See Garcia*, 553 F.3d at 729. Tazu reads *Garcia* as letting him file a habeas petition to challenge the execution of any removal order that might trigger allegedly unlawful effects. But it does not.

10

*Garcia* states the obvious: what the Act gives, it can also take away. There, we held that § 1252(g) does not thwart our power to declare that the Attorney General lacks the power to start removal proceedings. 553 F.3d at 726–27, 729. In that case, an alien had become a lawful permanent resident by falsely claiming that she derived citizenship from her mother, a U.S. citizen. *Id.* at 726. But the woman she named was not her mother. *Id.* When the Government found out eight years later, it started removal proceedings. *Id.* But another provision of the Act bars the Government from rescinding a status change and removing an alien if it does not act within five years. *Id.* (discussing 8 U.S.C. § 1256(a)).

Before us, the Government framed Garcia's claim as challenging the Attorney General's *discretion* to start removal proceedings, which § 1252(g) shields. 553 F.3d at 728–29. We disagreed. Instead, we held that Garcia was challenging the Attorney General's statutory "*authority* to commence those proceedings" in the first place. *Id.* at 729 (emphasis in original). In other words, when the Act deprives the Attorney General of the discretion to act, a challenge to that lack of statutory authority is not barred as a challenge to the exercise of discretion. *Garcia* addressed only a case in which the Act itself took away the Attorney General's authority. It does not reach Tazu's claims under other provisions.

Tazu points to no flaw in the Attorney General's statutory authority to remove him. *See* Pet'r's Br. 26, 28. Nor does he challenge the existence of his removal order. *See Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1363, 1368 (11th Cir. 2006) (holding that § 1252(g) does not reach such challenges). Nor does he

11

challenge Government actions taken before the Attorney General tried to execute that order. *Kwai Fun Wong v. United States*, 373 F.3d 952, 965 (9th Cir. 2004) (reading § 1252(g) as not reaching such challenges). We have no occasion to consider such claims.

Any other rule would gut § 1252(g). Future petitioners could restyle any challenge to the three actions listed in § 1252(g) as a challenge to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law. That would also contravene the Supreme Court's holding in *American-Arab Anti-Discrimination Committee*, which funneled review even of constitutional challenges into a single petition for review filed with the appropriate court of appeals. 525 U.S. at 483, 485. Thus, the Second Circuit can consider those claims as part of a petition for review. But we cannot.

## III. THE DISTRICT COURT ALSO LACKED JURISDICTION TO REVIEW TAZU'S DETENTION CLAIM

Tazu also challenges the Government's re-detaining him for prompt removal. The Government, he notes, ended his supervision period without first giving him notice and a revocation interview. By doing so, he argues, it violated the agency's rules and thus due process. *See* 8 C.F.R. § 241.4(*l*)(1). While this claim does not challenge the Attorney General's *decision* to execute his removal order, it does attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it.

### A. Section 1252(g) strips us of jurisdiction over the act of executing a removal order; that act includes Tazu's short re-detention

The text of § 1252(g) resolves this claim. It strips us of jurisdiction to review the Attorney General's "decision or *action* … to … execute [a] removal order[]" (emphasis added). Tazu's challenge to his short re-detention for removal attacks a key part of executing his removal order. The verb "execute" means "[t]o perform or complete." *Execute*, *Black's Law Dictionary* (11th ed. 2019). And to perform or complete a removal, the Attorney General must exercise his discretionary power to detain an alien for a few days. That detention does not fall within some other "part of the deportation process." *Am.-Arab*, 525 U.S. at 482. We thus hold that a brief door-to-plane detention is integral to the act of "execut[ing] [a] removal order[]."

The Government re-detained Tazu just three days after it got his new passport. If courts had not intervened, it would have removed him just three-and-a-half weeks after re-detaining him. Re-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal. So § 1252(g) funnels review away from the District Court and this Court.

### B. Section 1252(b)(9) also eliminates the District Court's jurisdiction over Tazu's re-detention claim, as it "arises from" an action taken to execute his removal

Though § 1252(g) does independent work, it can overlap with § 1252(b)(9). *Am.-Arab*, 525 U.S. at 483–84. The latter

13

provision states that if a claim "aris[es] from any action taken or proceeding brought to remove an alien," then review of that claim "shall be available only in judicial review of a final order." In other words, § 1252(b)(9) funnels that claim into a petition for review.

To remove an alien means to send him back permanently to his home country. *E.O.H.C.*, 950 F.3d at 184. Tazu's claim arises out of the action to remove him. In *E.O.H.C.*, we held that sending Guatemalans to Mexico temporarily to await the outcome of their pending asylum application did not "arise from" an action to remove them because it was "not part of the process of remov[ing] [them] to Guatemala." *Id.* Here, by contrast, Tazu's brief re-detention *was* part of sending him back to Bangladesh. And the legal questions he raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus "aris[e] from") an "action taken" to remove him there. *See, e.g.*, *Aguilar v. U.S. ICE*, 510 F.3d 1, 13–14 (1st Cir. 2007) (holding that § 1252(b)(9) funneled an ineffective-assistance challenge into a petition for review because the challenge was "inextricably intertwined with" the alien's "removal proceeding").

Section 1252(b)(9) does not foreclose all claims by an immigration detainee. If Tazu had challenged the length of his confinement, for instance, he could have pursued that challenge outside a petition for review. *See E.O.H.C.*, 950 F.3d at 186. That is because prolonged detention suggests that removal is not reasonably foreseeable. *See Demore v. Kim*, 538 U.S. 510, 527 (2003) (distinguishing detention once removal is "no longer practically attainable" from detention when removal is

14

imminent) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). Challenges to the length or conditions of an alien's confinement are not directly about removal. "For these claims, review is now or never." *E.O.H.C.*, 950 F.3d at 180. So the Act does not funnel them into a petition for review.

Here, by contrast, Tazu's re-detention challenge *is* directly about removal. So whether we analyze it under § 1252(g) or § 1252(b)(9), the outcome is the same: the District Court lacked jurisdiction to hear it.

## IV. NEITHER § 1252(G) NOR § 1252(B)(9) IS UNCONSTITUTIONAL AS APPLIED

Because Tazu's claims sound in due process, barring all judicial review could raise constitutional concerns. But he can raise all his claims in a petition for review. *See* § 1252(a)(2)(D). There is no constitutional problem with funneling them there.

Congress designed the petition-for-review process to handle attacks on "any action taken … to remove an alien." § 1252(b)(9). Indeed, "most claims that even relate to removal" must be brought in a single petition for review after a final removal order. *E.O.H.C.*, 950 F.3d at 184. That includes challenges to the validity of the removal order. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020) (citing *INS v. Chadha*, 462 U.S. 919, 938 (1983)). It also includes claims that, while distinct from the final order itself, are so directly tied to the process of removal that Congress decided they should be reviewed alongside the final order of removal. *See id.* at 1691–92 (Convention Against Torture claims); *see also* § 1252(b)(9) (claims "arising

15

from any action taken or proceeding brought to remove an alien").

Tazu challenges actions taken to remove him. By challenging the timing of his removal, he tries to thwart the removal itself. The same is true of his challenge to his re-detention. He can thus raise his claims in a petition for review. Because both challenges raise "constitutional claims or questions of law," jurisdiction to hear them in a petition for review "is never limited or eliminated." *McAllister v. Att'y Gen. of the U.S.*, 444 F.3d 178, 183 (3d Cir. 2006) (citing § 1252(a)(2)(D)).

Tazu has no constitutional right to more review than that. We have already held that a petition for review is an adequate substitute for a petitioner's historic right to habeas corpus. *Verde-Rodriguez v. Att'y Gen. of the U.S.*, 734 F.3d 198, 207 (3d Cir. 2013). Judicial review of motions to reopen covers the same kinds of issues and offers roughly the same safeguards and scope of review as habeas. *Luna v. Holder*, 637 F.3d 85, 99 (2d Cir. 2011). And Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into "the cabin of a plane bound for [Bangladesh]." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1970 (2020). Fortunately, his removal is already stayed before the Second Circuit. We trust that he will be able to stay here with his family while he seeks relief.

\* \* \* \* \*

By raising his claims in the wrong proceeding, Tazu chose a path that cannot lead to relief. He demands that the Attorney General wait before removing him. And he contests how the

16

Government re-detained him to remove him promptly. But both claims challenge the act of executing his removal order. So under § 1252(g) and (b)(9), we and the District Court lack jurisdiction. He can pursue both claims, of course, but not here. He must raise them in his petition for review before the Second Circuit. We will thus reverse and remand with instructions to dismiss for lack of jurisdiction.