**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORGE FELIX IBARRA-PEREZ, also known as Jorge Ibarra-Perez, | No. 24-631 |
| *Plaintiff - Appellant*, | D.C. No. 2:22-cv-01100-DWL-CDB District of Arizona, Phoenix |
| v. | |
| UNITED STATES OF AMERICA, | ORDER |
| *Defendant - Appellee*. | |

Filed June 25, 2026

Before: Michael Daly Hawkins, William A. Fletcher, and
Ryan D. Nelson, Circuit Judges.

Order;
Statement by Judges Hawkins and W. Fletcher;
Statement by Judge Bea

# SUMMARY[*]

## Immigration

The panel denied a petition for rehearing en banc in a case in which the panel held that Jorge Felix Ibarra-Perez's Federal Tort Claims Act suit for damages based on an improper removal to Mexico was not barred by 8 U.S.C. § 1252(g), which bars jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the [government] to commence proceedings, adjudicate cases, or execute removal orders."

Respecting the denial of rehearing en banc, Judges Hawkins and W. Fletcher wrote that the court appropriately denied en banc rehearing. Noting that the Supreme Court has directed courts to read § 1252(g) narrowly and the failure of Ibarra-Perez's removal order to mention Mexico, Judges Hawkins and W. Fletcher disagreed with their dissenting colleagues that Ibarra-Perez's removal to Mexico was an "execution" of his removal order. In their view, this interpretation is dangerous because it would allow § 1252(g) to insulate from judicial review any post-hearing decision to remove noncitizens to third countries where they would be in danger of persecution, torture, and even death.

Respecting the denial of rehearing en banc, Judge Bea, joined by Judges O'Scannlain, Callahan, Bennett, R. Nelson, Bade, Collins, Lee, Bress, Bumatay, VanDyke, and Tung, wrote that the panel's divided decision nullified § 1252(g), and that the court should have reheard this matter en banc to

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

correct the panel's decision, which ignored clear statutory language, distorted this court's precedent, and adopted an interpretation of § 1252(g) that has been rejected by every other circuit to consider the issue.

Judge Bea further wrote that, under the panel majority's interpretation of § 1252(g), any alien may now challenge his removal in federal district court, outside the petition-for-review process, so long as his claim for relief alleges the government's "lack of legal authority to remove him." However, Congress sought to forestall such a two-track approach when it made a petition for review in a court of appeals the "sole and exclusive" means for judicial review of "any cause or claim" arising from the execution of a removal order. 8 U.S.C. §§ 1252(a)(5), (g). The disruptive effects of the panel's decision are already apparent. Many district courts, citing the panel's decision, have exercised jurisdiction over petitions filed by aliens subject to final orders of removal who have sought last-second injunctions to block the execution of their removal orders.

## ORDER

Judges Hawkins and W. Fletcher recommended denial of Appellee's petition for rehearing en banc. Judge R. Nelson voted to grant the petition.

The full court has been advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 40.

The petition for rehearing en banc (Dkt. No. 59) is **DENIED**.

HAWKINS and W. FLETCHER, Circuit Judges, respecting the denial of rehearing en banc:

Our court has appropriately denied en banc rehearing in this case. The sole question answered in the panel's opinion is whether 8 U.S.C. § 1252(g) prevents federal courts from exercising subject matter jurisdiction over Jorge Felix Ibarra-Perez's suit for damages based on an improper removal to Mexico. The panel held that it does not.

Section 1252(g) bars jurisdiction over "any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to* commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter." 8 U.S.C. § 1252(g) (emphases added). The Supreme Court has repeatedly cautioned against a broad reading of this jurisdictional bar. The Court has characterized the bar as "narrow," and has rejected the "implausible" assertion that § 1252(g) "covers the universe of deportation claims." *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482, 487 (1999); *see also DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). In the words of the Court, § 1252(g) applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *AADC*, 525 U.S. at 482 (emphasis in original). The Court has "not interpret[ed] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General," but has instead "read the

language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion) (describing the holding of *AADC*).

The question before our panel was whether the government's removal of Ibarra-Perez to Mexico was an execution of his removal order within the meaning of § 1252(g). Our dissenting colleagues contend that it was. We strongly disagree.

Ibarra-Perez's removal order nowhere mentioned Mexico. The Immigration Judge ("IJ") ordered Ibarra-Perez removed but withheld removal to Cuba because of the likelihood of persecution in that country. During proceedings before the IJ, Ibarra-Perez repeatedly gave reasons why he feared being sent to Mexico, and the government never suggested Mexico as a possible country of removal. Only after proceedings before the IJ were completed did the government designate Mexico as Ibarra-Perez's country of removal. Ibarra-Perez challenged this "separate and post-hearing decision." *Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025); *cf. Johnson v. Guzman Chavez*, 594 U.S. 523, 536–40 (2021) (distinguishing removal orders as "separate" from withholding-of-removal orders, which limit "where" a noncitizen can be removed).

Despite the Supreme Court's direction that we read § 1252(g) narrowly, and despite the failure of Ibarra-Perez's removal order to mention Mexico, our dissenting colleagues contend that the government's removal of Ibarra-Perez to Mexico is an "execution" of his removal order. Our colleagues' interpretation of § 1252(g) is not only wrong. It is dangerous. If our colleagues are right, § 1252(g) "entirely insulate[s] from judicial review any post-hearing decision by

ICE to remove noncitizens to third countries where they would be in danger of persecution, torture, and even death." *Ibarra-Perez*, 154 F.4th at 997.

---

BEA, Circuit Judge, with whom O'SCANNLAIN, CALLAHAN, BENNETT, R. NELSON, BADE, COLLINS, LEE, BRESS, BUMATAY, VANDYKE, and TUNG, Circuit Judges, join, respecting the denial of rehearing en banc:

The panel's divided decision nullified 8 U.S.C. § 1252(g), a basic jurisdiction-stripping provision of the Immigration and Nationality Act (INA). We should have reheard this matter en banc to correct that erroneous and disruptive decision.

Section 1252(g) strips federal courts of jurisdiction over "any cause or claim arising from the decision or action by the [Department of Homeland Security] . . . to . . . execute removal orders," except through a petition for review of a final removal order. But under the panel majority's interpretation of § 1252(g), any alien may now challenge his removal in federal district court, outside the petition-for-review process, so long as his claim for relief alleges the government's "lack of legal authority to remove him." *Ibarra-Perez v. United States*, 154 F.4th 989, 998 (9th Cir. 2025).

Of course, potentially every claim for relief alleges that another party lacked the "legal authority" to take the action to which the claimant objects. If P sues D for trespass, he must allege that D had no "legal authority" to enter his land. Likewise, if an alien sues the government in federal court

and seeks injunctive relief to block the execution of his removal order, our basic pleading rules require him to allege, in the panel majority's words, the government's "lack of legal authority to remove him." *See* Fed. R. Civ. P. 8(a). According to the panel majority, Congress went to the trouble of enacting § 1252(g) despite knowing that this provision had no practical effect beyond the well-established pleading standards in the Federal Rules of Civil Procedure. What an odd thing for Congress to have done.

The panel's decision ignores clear statutory text, distorts our precedent, and adopts an interpretation of § 1252(g) that has been rejected by every other circuit to consider the issue. This interpretation will "gut § 1252(g)," because an alien can "restyle any challenge . . . as [one] to the Executive's general lack of authority." *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 298 (3d Cir. 2020) (Bibas, J.). An alien who is subject to a final removal order has every incentive to step outside the administrative process and seek emergency relief in federal district court. Congress sought to forestall such a two-track approach when it made a petition for review in a court of appeals the "sole and exclusive" means for judicial review of "any cause or claim" arising from the execution of a removal order. 8 U.S.C. §§ 1252(a)(5), (g). The panel's interpretation of § 1252(g) undermines that statutory scheme.

The disruptive effects of the panel's decision are already apparent. Throughout the country, aliens subject to final removal orders have filed last-second petitions in federal district court, requesting injunctions to block the execution of their removal orders. These claims clearly "aris[e] from the decision . . . to . . . execute removal orders" and fall within the scope of § 1252(g). Yet many district courts, citing the panel's misinterpretation of § 1252(g), have

exercised jurisdiction over these petitions and enjoined the government from executing these removal orders.[1] Unless the Supreme Court corrects the panel's decision, district courts will continue to interfere with the executive branch's exercise of its removal duties, causing the friction, delay, and inter-branch conflict that Congress enacted § 1252(g) to prevent. I respectfully, but strongly, disagree with the decision not to rehear this matter en banc.

## I

## A

In 2019, at the age of forty-seven, Jorge Ibarra-Perez fled his native Cuba. He arrived in Mexico and received a one-year humanitarian visa. After spending four months in Mexico, Ibarra-Perez traveled to the United States border and presented himself at a port of entry. He was placed in removal proceedings and filed *pro se* applications for asylum, withholding of removal to Cuba, and protection under the Convention Against Torture (CAT). An immigration judge (IJ) denied his asylum and CAT applications and issued an order of removal that designated Cuba as a country of removal. The IJ also granted Ibarra-Perez withholding of removal as to Cuba. Ibarra-Perez

---

[1] *See, e.g.*, *Soliman v. Warden*, No. 1:26-cv-02465-DAD-SCR, 2026 WL 1047787, at *1–*2 (E.D. Cal. Apr. 17, 2026); *Guerra v. Blanche*, No. 2:26-cv-00498-GMN-MDC, 2026 WL 949027, at *3 (D. Nev. Apr. 7, 2026); *Castillo v. Chestnut*, No. 1:25-CV-01296-SAB-HC, 2026 WL 121652, at *3, *5 (E.D. Cal. Jan. 16, 2026); *Qu v. Mullin*, No. 5:26-cv-01302-CAS-AGR, 2026 WL 836681, at *3 (C.D. Cal. Mar. 26, 2026); *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *2–3 (D. Nev. Apr. 22, 2026); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2841886, at *6–7 (D. Md. Oct. 7, 2025); *Romero v. Ladwig*, No. 25-cv-1106-JWD-EWD, 2026 WL 685131, at *2 (M.D. La. Mar. 10, 2026).

waived his right to appeal. Thus, his removal order became final on January 10, 2020.

Employees of U.S. Immigration and Customs Enforcement (ICE), an agency within the Department of Homeland Security (DHS), then contacted consular representatives from Mexico, Nicaragua, and Colombia to ask whether their countries would accept Ibarra-Perez. Because Ibarra-Perez's Mexican humanitarian visa was still effective at this time, Mexico agreed to accept him. On January 15, 2020, ICE agents informed Ibarra-Perez that he would be sent to Mexico. Ibarra-Perez expressed surprise, fear, and distress about being sent there. But he did not file a motion to reopen his removal proceedings, and he had not applied for withholding of removal to Mexico. Early on the morning of January 16, 2020, about 16 hours after Ibarra-Perez was informed that he would be sent to Mexico, ICE agents executed his removal order and took him to Mexico. Ibarra-Perez disliked Mexico and feared criminal elements there. So, after two days, Ibarra-Perez returned to the United States border and was taken back into immigration custody. He then successfully moved to reopen his earlier removal proceeding and was granted asylum on July 16, 2020.

Nearly two years later, Ibarra-Perez sued the ICE officers who removed him under the Federal Tort Claims Act (FTCA). He brought damages claims for negligence, false imprisonment, intentional infliction of emotional distress, and abuse of process, all on the theory that the government's decision to deport him to Mexico "without notice and without an opportunity to pursue a protection claim" was unlawful and that the defendant officers' execution of the removal order in that manner caused him harm. The government moved to dismiss the case for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), on the

ground that Ibarra-Perez's claims were barred by several jurisdiction-stripping provisions of the INA.  *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (g).   The district court granted the motion.  *See Ibarra-Perez v. United States*, No. 2:22-cv-01100-DWL-CDB, 2024 WL 216769, at *4–10  (D. Ariz. Jan. 19, 2024).  Ibarra-Perez timely appealed.

## B

The INA divests federal courts of jurisdiction over "any cause or claim . . . arising from the decision or action by the [DHS] . . . to . . . commence proceedings, adjudicate cases, or execute removal orders," except when such a cause or claim is brought in a petition for review.  8 U.S.C. § 1252(g). The sole question on appeal was whether § 1252(g) encompassed Ibarra-Perez's claims.  It should have been an easy decision.  Ibarra-Perez's FTCA claims required him to prove that DHS's removal of him to Mexico was unlawful. *See* Complaint, No. 2:22-cv-01100-DWL-CDB (D. Ariz. June 29, 2022), ECF Doc. 1 ("Defendant's actions in deporting [Ibarra-Perez] . . . were the proximate cause of considerable emotional, physical, and mental distress."). Thus, he brought "claim[s] . . . arising from the decision or action . . . to . . . execute [his] removal order."   8 U.S.C. § 1252(g).

Nonetheless, the panel majority, over Judge R. Nelson's dissent, held that § 1252(g) did *not* apply to bar Ibarra-Perez's claims.  *See Ibarra-Perez*, 154 F.4th 989.  Rather, the panel held that § 1252(g) bars claims that challenge the government's "discretionary authority" to commence removal proceedings, adjudicate cases, or execute removal orders, but does not bar claims that challenge the government's "legal authority" to take one of those actions—here, to execute a removal order. *Id.* at 997–99.  In

this case, Ibarra-Perez alleged that "he had due process and statutory rights to present evidence" to challenge the location of his removal prior to the execution of his removal order. *Id.* at 998. The panel majority concluded that he had raised "purely legal arguments" based on the government's "lack of legal authority to remove him to Mexico," so § 1252(g) posed no bar. *Id.* at 998–99. The Court reversed the district court's order that dismissed the case for lack of jurisdiction and remanded the case for further proceedings. *Id.* at 1001.

## II

## A

I begin by providing an overview of § 1252(g) to illustrate the magnitude of the panel majority's error.

Section 1252(g) was added to the INA as part of the "significantly more restrictive" scheme of judicial review that Congress enacted in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546. *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 475 (1999). To prevent the "fragmentation, and hence prolongation of removal proceedings," *AADC*, 525 U.S. at 487, Congress sought to channel "most claims that even relate to removal into a single proceeding" that would begin with a petition for review in the proper court of appeals. *Tazu*, 975 F.3d at 296 (citation and internal quotation marks omitted). Section 1252(g) is an integral part of that scheme. That provision divests federal courts of subject matter jurisdiction over "any cause or claim . . . arising from . . . the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders," except through a petition for review. The text of § 1252(g) is straightforward. "Any

cause or claim" that bears a relationship to one of those three acts, such that the cause or claim "aris[es] from" it, is barred.

Consistent with this clear language, we have held that § 1252(g) stripped federal courts of jurisdiction over an alien's request for an emergency stay of removal even when his claim implicated federal statutory and constitutional rights. *Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022). In *Rauda*, the alien sought to "enjoin the government from removing him—or in other words, enjoin 'action . . . to . . . execute removal orders,'" so his claim was barred. *Id.* (quoting 8 U.S.C. § 1252(g)). The source of the alien's asserted rights was irrelevant to our interpretation of § 1252(g). *See id.* at 779–81. It mattered only whether his claim arose from one of the actions specified in § 1252(g), which it did: the execution of his removal order. *Id.* at 778. Similarly, we held that § 1252(g) barred a *Bivens* suit based on a Fourth Amendment claim of false arrest, because the claim "challenge[d] [a] decision to commence expedited removal proceedings" against the alien. *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007). *Rauda* and *Sissoko* involved challenges to DHS's "legal authority" (after all, DHS has no "legal authority" to violate the Constitution), but we applied § 1252(g) because the claims at issue "arose from" one of the three actions specified by the statute.

B

With this background in mind, the panel should have held that § 1252(g) applied to bar Ibarra-Perez's claims and affirmed the district court's order of dismissal. Ibarra-Perez's FTCA claims sought "compensation for the harms and losses he suffered as the result of [his] unlawful deportation." Complaint, *supra*, p. 3. Those claims fall within the set of "any . . . claim[s] . . . arising from . . . the

decision or action . . . to execute [a] removal order."    8 U.S.C. § 1252(g).  As the panel majority itself explained: "Ibarra-Perez challenges ICE's . . . decision to remove him to Mexico."  *Ibarra-Perez*, 154 F.4th at 1000.  If that claim does not arise from the decision to execute a removal order, what does?

To resist this obvious conclusion, the panel majority contrived an interpretation of § 1252(g) under which its application did *not* turn on whether a claim "arose" from one of the three listed actions, as the text provides, but on whether a claim challenged a "discretionary" act of the government or instead challenged the government's "legal authority" to act. *Ibarra-Perez*, 154 F.4th at 997–99.  If the claim challenged the government's "legal authority," then § 1252(g) did not apply to bar it.  *Id.* at 998–99.  That reading of § 1252(g) constitutes a significant legal error.

First, the panel majority's interpretation relies on the faulty premise that an executive officer's "discretion" is separate from his "legal authority."  That distinction does not hold.    Often, an agency's organic statute (the "legal authority" for that agency's actions) delegates a degree of discretion to the agency.  If the agency abuses its discretion, it also acts beyond its legal authority.    Hence, the Administrative Procedure Act provides that the reviewing court shall "hold unlawful . . . agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The requirement that an executive officer not abuse his discretion describes one limit on his broader "legal authority."  Thus, as a conceptual matter, the panel majority's proposed distinction between "legal authority" and "discretion" is "illusory." *Ibarra-Perez*, 154 F.4th at 1007–08 (R. Nelson,

J., dissenting) (quoting *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021)).

Second, the panel majority's interpretation has no basis in the text of § 1252(g). That provision strips federal courts of jurisdiction over "any" claim, whether that claim challenges the government's legal authority or its exercise of discretion, so long as that claim "arise[s] from" one of the statute's three listed actions. "Any" cause or claim that does "arise" from one of those actions is barred, including Ibarra-Perez's claim. Judge R. Nelson's careful dissent analyzed the panoply of errors in the panel majority's textual analysis, and I refer the reader to that opinion. *Ibarra-Perez*, 154 F.4th at 1002–08 (R. Nelson, J., dissenting). Suffice it to say that the panel majority does not explain why "any" claim ought to mean only claims that relate to the government's discretionary authority, but not to its "legal authority."

Third, our precedents do not support the panel majority's unusual reading of § 1252(g). The panel majority claimed to follow longstanding precedents, under which "we have jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority.'" *Ibarra-Perez*, 154 F.4th at 996 (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)). But while we discussed the terms "legal authority" and "discretion" in decisions that involved § 1252(g), we have never held that a challenge to DHS's "legal authority" to execute a removal order was beyond the scope of § 1252(g).

In *Hovsepian*, for example, the plaintiff had been convicted of a crime in 1985 that was not a basis for deportation under the then-operative immigration laws. *See* 359 F.3d at 1148. In 1988 and 1990, Congress amended the INA and made the plaintiff's 1985 crime a deportable

offense.  *Id.* at 1149.  The plaintiff sought a permanent injunction to block the government from applying these laws to him retroactively, and we held that § 1252(g) did not bar this claim.  *See id.* at 1156–57.  But "removal proceedings against [Hovsepian] never commenced."  *Id.* at 1165.  One cannot challenge the execution of a removal order if removal proceedings have not commenced, so § 1252(g) was inapplicable for that reason.  There is no dispute that, unlike Hovsepian, Ibarra-Perez was subject to a final removal order, so *Hovsepian* does not control.

Or consider our decision in *Arce v. United States*, which the panel majority describes as "nearly identical" to this case.  *Ibarra-Perez*, 154 F.4th at 998.  From *Arce*, the panel majority derives a rule that § 1252(g) does not apply if a plaintiff's claim "was premised on a lack of legal authority to remove him."  *Ibarra-Perez*, 154 F.4th at 998 (citing *Arce*, 899 F.3d 796, 800 (9th Cir. 2018) (per curiam)).  But *Arce* created no such rule.  In *Arce*, our court had stayed an alien's order of removal pursuant to our General Order 6.4(c).  *See* 899 F.3d at 798–99.  While that stay was in effect, DHS nonetheless removed him.  *Id.* at 799.  He later brought claims under the FTCA based on his wrongful removal, and we held that § 1252(g) did not bar them.  *Id.*  *Arce* reflected a simple reading of the statutory text.  The stay of removal meant that "there was no enforceable removal order for the government to execute."  *Id.* at 801 (citation omitted).  Because there was no valid removal order to execute, Arce's claims did not arise from the government's decision to "execute [his] removal order," but from its disregard of our stay order.  There was no stay of removal in Ibarra-Perez's case, so *Arce* is inapplicable.

C

In sum, the panel's interpretation of § 1252(g) fails as a matter of abstract reasoning, conflicts with plain statutory text, and deviates from our precedent. *See also Ibarra-Perez*, 154 F.4th at 1002–14 (R. Nelson, J., dissenting). Although the panel majority tries to limit its holding to the facts, *id.* at 996, nothing in the logic of its opinion limits the decision. That is proven by the multitude of federal district courts that have intervened in the execution of final removal orders and cited the panel's opinion as the basis for doing so. *See supra* note 1; *see also infra* Part II(D).

The rule of decision in the panel's opinion is that when an alien who has been ordered removed sues in federal district court and claims that DHS lacks "legal authority" to remove him, his claims do not "arise" from DHS's "decision or action . . . to . . . execute [his] removal order," so § 1252(g) does not strip the court of jurisdiction. *See id.* The panel majority does not define what constitutes a challenge to "legal authority" with any precision. According to the panel majority, any alien who claims that his removal would violate "the Constitution, INA, or international law" could get into federal district court. *Ibarra-Perez*, 154 F.4th at 998. An alien need allege only that his removal would violate *some* right—perhaps one recognized only by customary international law—to evade § 1252(g)'s jurisdictional bar. That is a far cry from § 1252(g)'s text, which bars review of "any cause or claim."

It should come as no surprise that the four other circuits that have considered the panel majority's interpretation of

§ 1252(g) have rejected it.[2]  As Judge Bibas warned, this interpretation would "gut § 1252(g)," because an alien can "restyle any challenge . . . as [one] to the Executive's general lack of authority."  *Tazu*, 975 F.3d at 298; *see also Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021) (Grant, J.) ("any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order." (emphases in original)).  An interpretation that produces such destructive results suggests that the interpreter committed a serious error.  *See Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204, 217–18 (2002) (per Scalia, J.) ("[I]t is our job to avoid rendering what Congress has plainly done . . . devoid of reason and effect.").

## D

The panel's erroneous decision will have serious consequences.  Already, district courts in our circuit have applied the panel's decision—which involved a legal remedy for a completed removal—to cases seeking judicial stays of the ongoing execution of a removal order. [3]

---

[2]  *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 298 (3d Cir. 2020) (Bibas, J.); *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021) (Grant, J.); *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) (any "distinction between DHS's 'discretionary decisions' and its 'legal authority' to execute removal orders is illusory."); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Colloton, J.) ("Silva's case may not involve a discretionary decision by the agency," but § 1252(g) still applies because his claims "arise from a decision to execute a removal order[.]").

[3]  *See, e.g.*, *Qu v. Mullin*, 2026 WL 836681, at *2–3 (C.D. Cal. Mar. 26, 2026) (granting *ex parte* temporary restraining order (TRO) blocking removal of alien scheduled for removal flight in five days); *Soliman v.*

Following the panel's decision, these district courts have concluded that § 1252(g) does not strip them of jurisdiction to consider an alien's request to enjoin DHS from executing his removal order, so long as that alien challenges DHS's "legal authority" to remove him. *Qu v. Mullin*, 2026 WL 836681, at *3 (C.D. Cal. Mar. 26, 2026) (concluding that § 1252(g) did not apply because "petitioner here objects to the lack of process afforded him," rather than to "ICE's discretionary authority" (quoting *Ibarra-Perez*, 154 F.4th at 999)). Other district courts have exported the panel's "legal authority" exception from § 1252(g) to § 1252(b)(9), another jurisdiction-stripping provision. *See, e.g.*, *Perez Canet v. Blanche*, 2026 WL 1091763, at *3 (D. Nev. Apr. 22, 2026) ("The Ninth Circuit has concluded that §§ 1252(g) and (b)(9) do not strip courts of jurisdiction where a petitioner 'objects to the lack of process afforded him.'" (quoting *Ibarra-Perez*, 154 F.4th at 1000)). Although the panel majority describes its decision as narrow, the district

*Warden*, 2026 WL 1047787, at *1–2 (E.D. Cal. Apr. 17, 2026) (granting *ex parte* TRO blocking government from executing alien's removal order for an indefinite period); *Guerra v. Blanche*, 2026 WL 949027, at *3 (D. Nev. Apr. 7, 2026) (granting habeas petition and enjoining government from removing the petitioner to a third country without providing notice and an opportunity to present a fear-based claim); *Castillo v. Chestnut*, 2026 WL 121652, at *3–5 (E.D. Cal. Jan. 16, 2026) (same); *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *2–3 (D. Nev. Apr. 22, 2026) (same); *Sarkisov v. Blanche*, No. 2:25-CV-02321-JAD-DJA, 2026 WL 949019, at *6–7 (D. Nev. Apr. 8, 2026) (same); *Hassan v. Blanche*, No. 2:26-cv-00411-JAD-MDC, 2026 WL 1121985, at *7 (D. Nev. Apr. 24, 2026) (same); *Samadi v. Blanche*, No. C26-1115-KKE, 2026 WL 1172917, at *5 (W.D. Wash. Apr. 30, 2026) (same).

courts charged with implementing that decision have applied it broadly.[4]

So long as the panel's decision remains good law, federal district courts will be an alternative forum in which an alien may challenge the merits of his removal. An alien's pleadings need only allege that DHS lacked "legal authority" to remove him.

The panel majority's interpretation of § 1252(g) is especially harmful because it subjects an executive agency's judgments on foreign affairs to judicial review. The "selection of a removed alien's destination . . . 'may implicate our relations with foreign powers' and require[s] consideration of 'changing political and economic circumstances.'" *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (quoting *Mathews v. Diaz*, 426 U.S.

---

[4] *See, e.g.*, *El-Bitar v. Hernandez*, No. 2:26-cv-00919-TMC, 2026 WL 1533009, at *3 n.2 (W.D. Wash. June 1, 2026) ("If DHS decides to remove a noncitizen to a country not identified in their removal order, it must provide notice and an opportunity to be heard on claims of asylum and withholding of deportation to that country." (citing *Ibarra-Perez*, 154 F.4th at 995)); *Feh v. Noem*, No. 26-cv-0578-LL-BLM, 2026 WL 686168, at *5 (S.D. Cal. Mar. 11, 2026) ("a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order" (citing *Ibarra-Perez*, 154 F.4th at 998)); *Oregel Amezcua v. Noem*, No. 5:26-cv-01070-SRM-AGR, 2026 WL 1048212, at *4 (C.D. Cal. Mar. 25, 2026) ("the Ninth Circuit has specifically held that Section '1252(g) does not bar due process claims'" (quoting *Ibarra-Perez*, 154 F.4th at 997)); *Ramirez v. Noem*, No. 2:25-cv-02136-RFB-MDC, 2026 WL 310090, at *9 (D. Nev. Feb. 5, 2026) ("where a noncitizen challenges the Attorney General's arguably discretionary decision on a purely legal basis as a 'violation [of] the Constitution' or 'INA,' courts have jurisdiction to review such decisions as 'premised on a lack of legal authority.'" (quoting *Ibarra-Perez*, 154 F.4th at 998)).

67, 81 (1976)). Congress understood that the executive branch requires "flexibility" in the field of removal, as it must weigh "practical and geopolitical concerns" and "avoid removals that are likely to ruffle diplomatic feathers." *Id.* at 344, 348. The choice of a removal country may turn on matters that are not amenable to judicial review: for instance, on whether the "Secretary or his designee determines that such designation is in the best interests of the United States," 8 C.F.R. § 241.15(f), or on the "nature or existence of a government" in a particular territory. *Id.* § 241.15(a).

Yet under the panel's decision, federal district courts can enjoin DHS from executing a final removal order even after DHS has worked for months to obtain travel documents and has booked a ticket for the alien on a chartered flight. *See, e.g.*, *Qu*, 2026 WL 836681, at *2–3 (enjoining removal of alien subject to final removal order and scheduled to board removal flight in five days). Even if these claims are rejected on the merits, the exercise of jurisdiction alone harms the executive's enforcement efforts. Foreign consular officials who agreed to accept an alien two weeks earlier may renege on that promise. The removal process involves exigencies that do not arise in the typical civil case.

Forcing DHS to justify the execution of a removal order in federal district court constitutes an untenable intrusion on executive functions. Congress understood this reality and enacted a litany of jurisdiction-stripping provisions in various amendments to the INA. *See* 8 U.S.C. §§ 1252(a), (b)(9), (g). It is for the executive branch, acting within the bounds of its delegated authority under the INA, to adapt its immigration policy in response to changing migration flows, domestic political concerns, and foreign policy issues. Unless corrected, the panel's decision will continue to impose unwarranted burdens on the executive branch and

offend the constitutional principle of separation of powers. *See Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) ("It is not within the province of the judiciary to order that foreigners who have never . . . been admitted into the country pursuant to law, shall be permitted to enter, in opposition to . . . the legislative and executive branches of the national government.").

## III

The panel majority's arguments to the contrary are unpersuasive.

## A

First, the panel majority invokes a "due process" argument to justify its atextual reading of § 1252(g). It argues that § 1252(g)'s jurisdictional bar must stop short of Ibarra-Perez's claims, because otherwise, he would lack a legal remedy. *See Ibarra-Perez*, 154 F.4th at 1000 ("Ibarra-Perez had no reasonable opportunity for judicial review of ICE's designation decision . . . [u]nder [an] expansive interpretation of § 1252(g), Ibarra-Perez would have no way to protect himself.").

But justice is not served when federal judges upend a legislative scheme to redress an individual's harm, no matter how sympathetic that individual's claim is.

As Justice Holmes once observed, "great cases . . . make bad law," for they "involve an overwhelming interest which appeals to the feelings . . . before which even well settled principles of law will bend." *N. Sec. Co. v. United States*, 193 U.S. 197, 400–01 (1904) (Holmes, J., dissenting). Ibarra-Perez presented such a case. He is a refugee from political persecution by a Communist dictatorship, having twice been imprisoned by the Cuban police on fabricated

charges. Uncounseled, he made a mistake in thinking that the IJ's grant of withholding of removal as to Cuba gave him the right not to be removed to another country. But what was true in Justice Holmes's time is true now: "[w]hat we have to do in this case is to find the meaning of some not very difficult words." *Id.* at 401 (Holmes, J., dissenting). However harsh the result, the panel majority had no license to ignore the "not very difficult words" that spell out § 1252(g).

Indeed, the enactment of a jurisdiction-stripping provision contemplates that courts will be unable to consider some sympathetic and meritorious claims. Section 1252(g) represents a legislative judgment that the costs of judicial interference with removals outweigh the costs to individuals who are removed and whose perhaps meritorious claims fall through the cracks of the petition-for-review and motion-to-reopen processes. "[A]ny policy toward aliens is . . . so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (Jackson, J.). Respecting that principle, we have already held, consistent with the Third Circuit, that § 1252(g) does not itself violate an alien's due process rights. *See Rauda*, 55 F.4th at 777; *see also Tazu*, 975 F.3d at 299–300 ("[petitioner] can raise all his claims in a petition for review . . . [t]here is no constitutional problem with funneling them there."). The panel majority subverted our holding in *Rauda* by reading an exception into § 1252(g) that effectively nullifies that provision.

Nor should we interpret § 1252(g) to carve out a narrower exception for constitutional claims. To be sure, a statute must evince Congress's "clear" intent to "preclude judicial review of constitutional claims" before we will

interpret it to bar such claims. *Ibarra-Perez*, 154 F.4th at 995–96 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). But § 1252(g) provides such a clear statement: it bars "any" claim arising from three discrete decisions related to removal. "Any" claim means "any" claim, constitutional or otherwise, so it is of no moment that Ibarra-Perez's claims asserted "due process" rights. *Contra Ibarra-Perez*, 154 F.4th at 998.

On other occasions when we have deviated from the INA's plain meaning to serve unstated constitutional concerns, the Supreme Court has corrected us. *See, e.g.*, *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) (requiring bond hearings after six months of detention under 8 U.S.C. § 1225(b)(1)–(2) because of due process concerns), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018) ("[n]othing in the text of § 1225(b)(1) or § 1225(b)(2) even hints that those provisions restrict detention after six months"); *Thuraissigiam v. DHS*, 917 F.3d 1097 (9th Cir. 2019) (holding that 8 U.S.C. § 1252(e)(2), as applied, violated the Suspension Clause), *rev'd*, 591 U.S. 103 (2020); *United States v. Ochoa*, 861 F.3d 1010 (9th Cir. 2017) (due process concerns excused full compliance with 8 U.S.C. § 1326(d)), *abrogated by United States v. Palomar-Santiago*, 593 U.S. 321, 327 (2021) ("[t]he Ninth Circuit's interpretation is incompatible with the text of § 1326(d)."). Rather than waiting for the Supreme Court to rectify the panel's erroneous and disruptive decision, we should have reheard this matter en banc.

## B

Finally, the panel majority suggests that its decision merely interpreted the word "execute" in § 1252(g) (which strips jurisdiction only as to claims "arising from the

decision or action . . . to . . . *execute* removal orders"). The panel majority reasons that "[b]ecause Mexico was not mentioned in the order of removal, Ibarra-Perez [did] not challenge the 'execution' of his removal order." *Ibarra-Perez*, 154 F.4th at 997. As the panel majority sees it, DHS "executes" an alien's removal order only when it sends him to a country that the IJ has specified in the removal order. But that interpretation conflicts with the basic text and structure of the INA.

A removal order "conclud[es] that the alien is deportable." 8 U.S.C. § 1101(a)(47)(A). The order is the final word as to removability—"whether an alien is to be removed from the United States," *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)—but it has no legal force as to where the alien may be removed. The INA provides that "[a]t the conclusion of the [removal] proceeding the [IJ] shall decide whether an alien is removable from the United States." 8 U.S.C. § 1229a(c)(1)(A). The statute says nothing about the IJ's duty to make a binding determination about where to send the alien. Although the IJ has a regulatory obligation to "identify a country . . . to which the alien's removal may in the first instance be made," that same regulation clarifies that "the order of the [IJ] does not limit the authority of the [DHS] to remove the alien to any other country as permitted by section 241(b) of the Act [8 U.S.C. § 1231(b)]." 8 C.F.R. § 1240.12(d).

To "execute" an alien's removal order, therefore, DHS need only remove him "*from* the United States," not "*to* [a] particular country." *Guzman Chavez*, 594 U.S. at 536 (emphases in original). Here, Ibarra-Perez was subject to a valid, final removal order. The IJ designated Cuba as the country of removal, thereby fulfilling her obligation to "identify a country . . . to which the alien's removal may in

the first instance be made." 8 C.F.R. § 1240.12(d). So, when ICE agents removed Ibarra-Perez from the United States (to Mexico), they "execute[d] [his] removal order." *See* 8 U.S.C. § 1252(g).

Although the IJ had not designated a country of removal other than Cuba (as to which removal was withheld), that did not prevent DHS from "executing" Ibarra-Perez's final removal order. Because of the withholding order, DHS could not remove Ibarra-Perez to Cuba. 8 U.S.C. § 1231(b)(3). But DHS "retain[ed] the authority to remove [Ibarra-Perez] to any other country authorized by the statute." *Guzman Chavez*, 594 U.S. at 536; *see* 8 C.F.R. §§ 241.15(a), 1240.10(f), 1240.12(d) ("In the event that [DHS] is unable to remove the alien to the specified . . . country, the order of the [IJ] does not limit the authority of [DHS] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]."). "[T]he statute makes clear that removability and withholding relief are distinct," and, indeed, withholding of removal relief "says nothing" about the "antecedent question" of removability. *Guzman Chavez*, 594 U.S. at 536–37.

The panel's erroneous interpretation of what it means to "execute" a removal order also disrupts the structure that DHS and the Department of Justice (DOJ) jointly created to carry out their respective duties under the INA. Under the panel's decision, in the case of an alien who is subject to a valid removal order, an ICE officer apparently must still ask an IJ for authorization before he can remove that alien to any country not named in the alien's removal order. *See Ibarra-Perez*, 154 F.4th at 991 (contemplating that "[t]he government" could have "asked for an order removing Ibarra-Perez to Mexico."). The result is a judicially forced delegation of power from ICE officers (who work for DHS)

to IJs (who work for DOJ) that disturbs the agencies' established allocation of statutory authority.

IJs, as officials within DOJ, exercise only the statutory authority delegated to them by the Attorney General. *See* 8 U.S.C. §§ 1101(b)(4), 1103(a)(2); 8 C.F.R. § 1003.10(a). The Attorney General has delegated to IJs the authority to "[d]etermine removability," grant withholding of removal and CAT relief, and decide eligibility for various kinds of admissibility waivers. 8 C.F.R. § 1240.1(a)(1). But he has not authorized IJs to issue country-of-removal designations that bind DHS officials. Rather, the Attorney General reserved for DHS the authority—subject only to statutory limits—to select a country of removal for an alien ordered removed, notwithstanding the IJ's designation. *See id.* §§ 1240.12(d) ("[T]he order of the [IJ] does not limit the authority of the [DHS] to remove the alien to any other country as permitted by [the INA]"); 241.15(a) (similar). DOJ has promulgated another rule clarifying that the immigration courts lack jurisdiction to review DHS's country-of-removal designations. *Id.* § 1241.15. And in a comprehensive joint rulemaking, the agencies explicitly rejected a comment that argued, like the panel majority, that DHS's removal authority was bound by the country (or countries) that an IJ designated in a removal order. *See* 70 Fed. Reg. 661, 672 (2005) ("[I]mmigration law provides the United States with the authority to remove aliens to countries other than those designated by an immigration judge.").

The panel's interpretation rewrites these regulations, none of which Ibarra-Perez challenged. The panel's approach requires DHS, on pain of federal district court disapproval, to obtain an IJ's sign-off as to the country of removal before executing any removal order. No such requirement appears in the statute or in agency regulations.

Nor would such a requirement be practicable, as an IJ cannot know at the time he issues a removal order whether the designated country of removal will indeed accept the alien. Therefore, even to the extent that the panel's decision was limited to an interpretation of the word "execute," that would not have obviated the need for en banc rehearing.

*        *        *

The panel majority, without any basis in text or precedent, adopted an interpretation of § 1252(g) that makes no sense on its own terms and has been rejected by every other circuit that has considered it. That interpretation will lead to the "deconstruction, fragmentation, and . . . prolongation of removal proceedings" that § 1252(g) was "specifically directed" to prevent. *AADC*, 525 U.S. at 487. I regret that the panel's confusing, disruptive, and far-reaching decision remains the law of the Ninth Circuit.